## JOHN B. BOWMAN

*v.*

## ANDREW WETTIG.

1. A TOWN PLAT—*not a necessary muniment of title—parol evidence to establish the locality of land.* A party may establish title to the premises described in his deed as a town lot, although no plat has ever been made and recorded. He is not to be prejudiced by such an omission of his grantor, if he can give locality to the premises, and this may be established by other satisfactory proof.

2. Parties owning lands in common, have the right to divide it into town lots, and number them, even if they fail to make a public record of it. For their own convenience, they may divide and subdivide it and give a name to the subdivisions; and each take such specified number as may be mutually agreed upon.

3. NOTICE—*to produce original papers—when necessary.* The general rule is, that a party will not be allowed to give parol evidence of the contents of a written instrument, unless he has given the opposite party notice to produce the original.

4. But this rule has no application to recorded deeds. A certified copy from the record can be used, on the proper preliminary proof being made, without notice to the opposite party to produce the original. ·

5. SECONDARY EVIDENCE—*preliminary proof required to admit a certified copy of a recorded deed.* A plaintiff in ejectment, as a basis for the introduction of a certified copy of a recorded deed, made oath that he was not in possession of the original, that he had searched for it unsuccessfully, and could not produce it. To this preliminary proof no objection was made, and it was, therefore, held sufficient, and brought the case within the amendatory act of 1861, on that subject.

6. ACKNOWLEDGMENT OF DEEDS—*out of this State, under act of* 1819. Under the act of 1819, the clerk of any court of record was authorized to take the

acknowledgment of a deed for lands lying in this State, he certifying the fact, under his seal of office.

7. So, where a deed for lands lying in this State was acknowledged in May, 1821, before the clerk of a Circuit Court in the State of Missouri, his certificate in proper form, of that fact, under his seal of office, was held sufficient under that act.

8. SAME, *under the acts of* 1822 *and* 1847. Under the act of 1822, if a deed for land in this State is executed and acknowledged in another State in conformity to the laws of the State where made, it can be recorded, and used in evidence in the courts of this State, and a similar provision is found in the act of 1847.

9. SAME—*of the certificate of conformity.* Since the act of 1851, the certificate of conformity required by the sixteenth section of chapter twenty-four of the Revised Statutes need not be recorded, nor is it material at what time it was made.

10. POSSESSION *of a part of a tract of land claiming the whole.* A title to land may be proved in this State by showing possession of a part of the land under a deed which includes more land, with claim of ownership to the whole, and such a title is good against all persons who cannot show a title from the United States, or from some one having a prior possession, and that the one claiming under the oldest possession under paper color of title has the best right.

11. SAME—*required duration of such possession.* To show a foundation by possession of a part with a deed for the whole coupled with it, it is not necessary to show such possession lasted twenty years.

12. So possession of a part, claiming the whole, under a deed for the whole from a prior possessor, though short of twenty years, is at least *prima facie* evidence of title to the whole tract, as against a mere intruder or trespasser showing no paper title.

13. SAME *rule applied to town lots.* And this principle applies to a party who is in actual possession of one only of several town lots.

14. TAX DEED—*within what time the purchaser is entitled thereto.* A purchaser of land at a tax sale is not entitled to a deed until the expiration of two years from the sale, the owner being allowed that time within which to redeem.

15. COLOR OF TITLE—*of the good faith required.* A party holding a certificate of purchase of land under a tax sale, who accepts a deed therefor before the two years allowed for redemption expire, knows that he is not entitled to it, and cannot be considered as acquiring the color of title which such deed, if he was entitled to it, would give him, in good faith, within the meaning of the first or second section of the act of 1839.

16. When a deed on its face discloses the fact that it is illegal; that it is executed in defiance of the law, the law will presume bad faith, while the presumption will be in favor of good faith until rebutted, when the deed is not prohibited by law, and purports to convey title.

27—39TH ILL.

17. But a purchaser from the grantee in a tax deed, which was executed before the expiration of two years from the sale, would not be held to notice of the illegality appearing on its face.

18. Nor, if a tax deed is executed after the expiration of the time of redemption, would it be vitiated as color of title by defects in the proceedings which would vitiate it as paramount title.

19. PRACTICE—*time for offering instructions.* Under a rule of court, requiring instructions to be presented before the argument to the jury had closed, instructions were offered before the plaintiff had closed his argument, but the court declined to receive and act upon them. *Held,* That if the instructions were proper they should have been given, and for the refusal to give them the judgment ought to be reversed.

20. DESCRIPTION OF LAND IN A DEED—*of the certainty required.* A deed purported to convey "the following lots, tracts or parcels of land, lying and being in the county of St. Clair and State of Illinois, being lots in blocks one, two," etc., to "twenty-nine, in Illinoistown, also in surveys one hundred and seventeen," etc., to "one hundred and twenty-seven of the common fields of Cahokia, in St. Clair county, State of Illinois, whether the same have been laid off into town.lots, or otherwise." The description of the property intended to be conveyed was sufficiently certain. Conveying "lots" in certain blocks, if there be more than one to convey, would seem to carry all the lots in the block. But, if this were not so, there is no uncertainty in the description of the surveys, and the lots, being shown to be within any of the surveys, would pass by the deed.

21. A description of land in a deed may be made sufficiently certain, if not so of itself, by reference to other deeds in which it is sufficient.

APPEAL from the Circuit Court of St. Clair county; the Hon. JOSEPH GILLESPIE, Judge, presiding.

Mr. G. KOERNER, for the appellant.

Mr. WM. H. UNDERWOOD, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of ejectment in the Circuit Court of St. Clair county, brought by John B. Bowman against Andrew Wettig, to recover the possession of lot one in block twenty-one, in Illinoistown in that county.

The cause was tried by a jury under the general issue, and a verdict for the plaintiff. A motion for a new trial was made and overruled, and a judgment entered on the verdict and a writ of possession awarded.

From this judgment the defendant appeals to this court, and assigns as error, that the court admitted improper evidence for the plaintiff, by admitting all the different papers and title papers to be read in evidence against the objections of the defendant; that secondary evidence was admitted without proper preliminary proof and notice; that the deed from the sheriff to the defendant was improperly excluded by the court; that the court refused to give to the jury the defendant's instructions; the court refused a new trial, the verdict being against the law and the evidence; and for other errors not specially assigned.

It appears from the bill of exceptions, that the plaintiff, to maintain the issue on his part, offered in evidence a book purporting to be a record of the plat of Illinoistown, to the reception of which the defendant objected. The court overruled the objection and admitted the record in evidence. On this ruling the appellant makes his first point. He insists that the record book should not have been admitted for the reason that the law then in existence did not allow such a paper to be recorded.

In the declaration, the premises in controversy are described as " lot one in block twenty-one in the town of Illinois, reference being had to the plat of said town as laid out and caused to be recorded by John McKnight and Thomas Brady, in book C, pages 314 and 315, of the records in the recorder's office, in and for said county of St. Clair." This record was the evidence offered by the plaintiff, and was made on the 14th day of May, 1818.

The appellant insists that the plat was not authenticated or acknowledged, and that it was irrelevant to the issue.

The record shows, in addition to the recorded plat, that the plaintiff introduced a witness, J. N. Piggot, who testified that prior to 1816, one Etienne Pensonneau claimed a tract of land opposite the city of St. Louis on Cahokia creek or river L'abbe, some ten arpents in front and running back to the bluffs; that he had built some houses on the tract opposite St. Louis; that at that time, the United States authorities had not sur-

veyed the land; that the tract was made up of French arpent claims in the Cahokia common field; that the boundaries of these claims were distinctly marked by stones, some of which were still visible; when these claims were surveyed by the United States the surveys were numbered, and those included in Pensonneau's claim were surveys 117, 118, 119, 120, 121, 122, 123, 124 and 125; Pensonneau sold this tract made up of these surveys to McKnight and Brady, and they laid out upon it the town of Illinois, and built on some of the lots and sold other lots afterward, claiming title; they never resided on the land but were merchants in St. Louis; they built a mill on the tract but not in the "town tract;" the buildings erected by Pensonneau were not on the survey on which the lot in question was located, and he is not certain whether the mill built by McKnight and Brady was on the same survey on which the lot in controversy is, but believes it might touch a part of the block in which the lot is; that defendant was in possession of the lot; had inclosed it with a fence; had an orchard on it, and had occupied it about ten years; the plaintiff also offered in evidence a certified copy of a recorded deed from Etienne Pensonneau and wife to McKnight and Brady for all that certain tract or quantity of land lying and being and situated near the Mississippi river opposite the town of St. Louis, containing ten acres and a half front on the river L'abbe, and running in depth fifty acres, being a north and south course, that is to say, the same course that the land (lines) of the common field of Cahokia run, on which said land is erected a brick house, a store and other outhouses.

The witness, Piggot, testified that the lot in controversy was on this tract of land and was a part thereof. This deed was also objected to by the defendant for uncertainty, and because no proper foundation for its introduction had been laid, and because it was not properly acknowledged and authenticated, and that no notice had been given the defendant to produce the original deed.

To account for the absence of the original deed the plaintiff was sworn in court, and testified that he had made proper

search; that the original deed was not in his possession, and that he could not produce it.

It will be observed the plaintiff claimed nothing by force of the town plat. The plat itself was not a necessary muniment of title. A party may establish title to a piece of ground described in his deed as a town lot, although no plat has ever been made and recorded. If he can give locality to the premises, he is not to be prejudiced by any omission of his grantor to comply with the requirements of the statute to make and record a plat. The various provisions of the statute respecting the laying out of land into town lots, do not make it necessary to produce the plat in every controversy concerning the title to a town lot. All this was said by this court in the case of *Manly et al.* v. *Gibson*, 13 Ill. 308, and has direct application to this case.

The plaintiff sought, by the introduction of the plat, to locate the premises in controversy, which he was enabled to do by connecting it with the testimony of Piggot. It matters not, then, whether the plat was or not improperly admitted to record. Suppose the plaintiff, on the trial, had made a plat of the Pensonneau tract and of the town of Illinois thereon, and asked the witness Piggot if the lot marked on it as lot one, in block twenty-one, was on a part of the Pensonneau tract? This the witness could do, if he knew the location of the Pensonneau claim. Whether the premises in controversy were included within that claim, was purely a question of fact, of which any one knowing the fact could speak. Any evidence, therefore, tending to solve this question was properly admissible. *Manly et al.* v. *Gibson, supra.* The plat then, taken in connection with the testimony of Piggot, went to identify the premises, and was properly admitted in evidence.

As to the objection made to the certified copy of the record of the deed from Pensonneau and wife to McKnight and Brady, it will be observed the plaintiff made oath that he was not in possession of the original, that he had searched for it unsuccessfully, and could not produce it. To this preliminary proof no objection appears to have been made by the defendant, and it will, therefore, be held sufficient, and it brings the case within

the act of the General Assembly, entitled "An act to amend chapter 24 of the Revised Code of 1845, entitled ' Conveyances.'" Laws of 1861, p. 174. No notice to the opposite party, in any such case, to produce the original, was ever required. It is only in cases where the party proposes to prove the contents of an instrument, as at common law by parol, that notice is requisite; never, we believe, where the record is intended to be used as evidence. It is understood to be the practice in all courts to read copies from the registry of deeds where the originals cannot be had. 1 Greenl. on Ev. § 571, in note 2. In this State, it has been held if a deed has been recorded a transcript may be introduced, the party offering it making oath that the original was not in his custody and was beyond his control, and this independent of any statute. *Ferguson* v. *Miles*, 3 Gilm. 358; *Mariner* v. *Saunders*, 5 id. 113.

The general rule is, that a party will not be allowed to give parol evidence of the contents of a written instrument, unless he has given the opposite party notice to produce the original, but this has no application to recorded deeds. The record can be read, or a certified copy used as evidence, on proof being made of inability to produce the original in conformity with the act of 1861, above cited. The transcript is regarded as the highest and most satisfactory degree of secondary evidence.

The objection that this deed is void for uncertainty in the description of the land conveyed, if ever valid, is removed by the testimony of Piggot. He locates the land, and fully identifies it. He proves the existence of boundary lines marked by stones, and the surveys as made and numbered by authority of the United States, and the erection of buildings on the land by Pensonneau. We are of opinion the description of the land conveyed, was made sufficiently certain by this testimony, so certain as to distinguish it from all other tracts in that locality, and of which the sheriff could, without mistake, put a party in possession, and this degree of certainty is all the law requires.

The plaintiff then offered in evidence a certified transcript of the record of a deed, accompanied by the same preliminary proof of absence of the original, of partition between McKnight

and Brady, of the lots in Illinoistown, allotting to themselves in severalty the lots therein, the lot in question falling to the share of Thomas Brady.

The objections made to this deed are, that it refers to a non-existing town plat or survey, of which there was no evidence, and that the deed was not properly acknowledged under the act of January 19, 1819, in force at the time the same was executed.

The plat referred to, was for purposes of identification only, and not as a muniment of title. Parties have the right, own-ing lands in common, to divide it into town lots, and number them, even if they fail to make a public record of it. For their own convenience, they can divide and subdivide the land, and each take such specified numbers as may be mutually agreed upon. There is no law against this. And they may give the subdivision a name.

As to the acknowledgment of the deed, it was made on the 29th of May, 1821, and acknowledged before the clerk of the Circuit Court of the county of St. Louis, State of Missouri, on the 11th day of June of the same year, and is, of course, governed by the act of 1819. The acknowledgment is as follows:

"STATE OF MISSOURI, ⎰
COUNTY OF ST. LOUIS. ⎰

"This day personally appeared before me, the clerk of the Circuit Court for the county of St. Louis, the above named John McKnight, and Thomas Brady and Harriet Brady his wife, well known to me as the signers of the foregoing instru-ment, and severally acknowledged the above and foregoing deed, or instrument in writing, to be their and each of their acts and deeds, hands and seals, for the purpose therein expressed," etc., with the relinquishment of dower by the said Harriet Brady. Given under my hand, and seal of office, at St. Louis, this 11th day of June, 1821.

"ARCHIBALD GAMBLE, *Clerk.*

"[With a place for the seal.]"

The law of 1819 has been examined, but it is not to be found in the digest of statutes relative to real estate prepared by Mr. Purple, referred to by appellant's counsel. By that act the clerk of any court of record could take the acknowledgment of a deed for lands lying in this State, he certifying the fact under his seal of office.

The death of Brady being proved, deeds from his heirs at law were offered in evidence, all which were objected to by the defendant, on the ground of uncertainty in the description of the land conveyed by them and to two of them, because the acknowledgments were taken before an "improper officer."

The first deed in this series is the deed from George W. Campbell, and Eliza, his wife, who was one of the children and heirs at law of Thomas Brady, deceased, to Neree Vallé. This deed was executed and acknowledged in Galena, in this State, before a notary public. Against it, uncertainty in the description of the land conveyed is alleged. We have examined the deed with great care, and can find no lack of certainty in the description of the land. It conveys all their interest in " the following lots, tracts or parcels of land lying and being in the county of St. Clair, and State of Illinois, being lots in blocks, one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, eighteen, nineteen, twenty, twenty-one, twenty-two, twenty-three, twenty-four, twenty-five, twenty-six, twenty-seven, twenty-eight, twenty-nine, in Illinoistown, also in surveys, one hundred and seventeen, one hundred and eighteen, one hundred and nineteen, one hundred and twenty, one hundred and twenty-one, one hundred and twenty-two, one hundred and twenty three, one hundred and twenty-four, one hundred and twenty-five, one hundred and twenty-six, and one hundred and twenty-seven, of the common fields of Cahokia, in St. Clair county, and State of Illinois, whether the same have been laid off into town lots or otherwise." Conveying "lots," in certain blocks, if there be more than one, the conveyance would seem to carry all the lots in the block. But if this was not so, the land is conveyed by the appropriate number of each survey, and if the lot in question

is proved to be on one of these surveys, the title to it passed by this deed. So if the description be too uncertain as to the "lots" in the several blocks conveyed, there is no uncertainty in the description of the survey.

In the deed from F. Rosier and wife, Mary Wyatte and Thomas J. Brady and wife, the description of the lots and land conveyed is the same as that in the deed from Campbell and wife, which we have held to be sufficiently certain. The same is true of the deed from Neree Vallé to Chouteau, and from Chouteau to the plaintiff. The description in these deeds, is made certain by reference to the other deeds.

Now, as to the other objection urged to the deed from Rosier and wife and Mary Wyatte, that the acknowledgment was taken before an improper officer, it will be seen the deed is a joint deed from Mrs. Rosier, Mary Wyatte and Thomas J. Brady, as heirs at law of Thomas Brady, deceased. Rosier and wife and Mary Wyatte acknowledged its execution before the recorder of the county of St. Louis, State of Missouri, in due and proper form. Thomas J. Brady and his wife acknowledged it before a judge of the County Court of Perry county, in the same State. In addition to this, Thomas J. Brady acknowledged the same deed before Mann Butler, a notary public for the county of St. Louis, Missouri, in due form, to which he certifies under his notarial seal. Admitting, under our statute, the recorder of a county in another State, though exercising judicial power, is not authorized to take the acknowledgement of deeds conveying land, still, if it be shown the deed is executed and acknowledged in conformity to the law of the State where made, it can be recorded and used in evidence in the courts of this State. Act of December 30, 1822, Purple's Real Estate Statutes, 465. And a similar provision is found in the act of February 22, 1847. That act provides that deeds, etc., concerning lands in this State, which have been or may hereafter be executed without this State, and within the United States, and which have been or may hereafter be acknowledged or proved, in conformity with the laws of the State, territory or district in which they were executed,

shall be admitted to record in the county or counties wherein the lands or real estate affected are situated, and such deeds, etc., acknowledged or proved as aforesaid, when so recorded may be used as evidence without further proof of their execution. Scates' Comp. 969. And the act of 1851 provides that , a certified copy of any deed, etc., affecting any real estate within this State, which has been acknowledged without this State in conformity with the laws of the State where such deed, etc., was acknowledged and which has been recorded in the proper county in this State, shall be evidence in all courts and places; *provided*, the party offering such certified copy in evidence will exhibit with the same, a certificate of conformity, as provided for in the sixteenth section of chapter twenty-four of the Revised Statutes, notwithstanding such certificate of conformity has never been recorded. Scates' Comp. 972. This provision of section sixteen, of chapter twenty-four, requires the clerk of a court of record in the State where the deed was executed, to certify under his hand and the seal of such court, that such deed is executed and acknowledged or proved in conformity with the laws of such State. Id. 962. Such a certificate is found attached to this deed, and made by the clerk of the County Court of St. Louis county, State of Missouri, under his hand and the seal of that court, and the same certified to be a court of record of that county.

No valid objection exists to the acknowledgment of the deed by Thomas J. Brady, before a notary public of St. Louis county, certified, as it is, under a notarial seal. That proves itself, and cures the defective acknowledgment, if it be one, in Perry county.

The objection that the certificate of conformity was made after the commencement of the suit, is of no force, since the statute above cited (Scates' Comp. 972), authorizes the deed to be used as evidence, notwithstanding the certificate of conformity has not been recorded, clearly implying that the time of its execution is wholly immaterial. See, on this point, *Shephard* v. *Carriel*, 19 Ill. 319.

The prior possession of a part of this tract of land claiming

the whole by McKnight and Brady, though short of twenty years, accompanied by a deed from Pensonneau, a prior possessor, for the whole tract, is at least *prima facie* evidence of title to the whole tract, as against a mere intruder or trespasser, showing no paper title.    *Herbert* v. *Herbert,* Breese (Beecher's ed.), 354, and cases there cited; *Dills* v. *Hubbard,* 21 Ill. 329.    And this court applied this principle to a party who was in actual possession of one only of several town lots. *Prettyman* v. *Wilkey,* 19 id. 241; *Metropolitan Bank* v. *Godfrey,* 23 id. 607.    This was the plaintiff's case.

The defendant offered in evidence, to show color of title in himself, made in good faith, a deed from the sheriff of St. Clair county for the lot in question.    This deed recites a judgment rendered by the County Court of St. Clair county, at the June Term, 1852, for the amount of taxes due on the lot in controversy, and a sale thereof, to satisfy this judgment on the seventh day of June thereafter, to the defendant for the taxes and costs.    The deed bears date July 15, 1853, about thirteen months after the sale.

By section sixty-nine of the act of 1845, two years are allowed in which to redeem lands or lots sold for taxes.    By section sixty-seven, it is made the duty of the clerk to make out and deliver to the purchaser of any land or lots sold for taxes, a certificate of purchase to be countersigned by the collector, describing the land or lot sold, the same as was described in the delinquent list, the amount of taxes and costs for which the same was sold, and that payment has been made therefor.

Section seventy-one provides, that at any time after the expiration of two years from the sale, if the land or lot shall not have been redeemed, the collector, on request and on the production of the certificate of purchase, shall execute and deliver to the purchaser, his heirs or assigns, a deed of conveyance for the real estate described in the certificate.    Scates' Comp. 999.

The question is, can a party holding such certificate when he accepts a deed to which he knows he is not entitled under

the law, be considered as acquiring the color of title which such deed, if he was entitled to it, would give him, in good faith, within the meaning of the first or second section of the act of 1839?

We have no hesitancy in answering this question in the negative. The deed was made and accepted in fraud of the law. The appellant knew, when he accepted this deed, that he was not entitled to it, and was not in a position to accept it, and, therefore, cannot use it as color of title made in good faith. The deed, on its face, informed him he was not entitled to a deed; that two years had not elapsed from the day of sale.

The legislature, impressed with the importance of quieting titles to land, have passed liberal laws to this end, and have been met in a corresponding spirit by the courts of the State. This court has not hesitated, in every case where it has been made to appear that the color of title, under which a party defends, has been made in good faith, to give full effect to such title. Where this element is wanting this court has always held that no claim can arise under it. But, where it appears, it is immaterial whether the color originates in a wrong or a right. *Woodward* v. *Blanchard*, 16 Ill. 430.

So it was held, in *McConnel* v. *Street*, 17 Ill. 253, that the deed itself purports good faith, unless facts and circumstances attending its execution show that the party accepting the deed has no faith or confidence in it. At the time this deed was executed there was then no fact or circumstance existing calculated to inspire confidence in it, but the contrary, there being actual notice on the face of the deed that he was not entitled to it. When a deed, on its face, discloses the fact that it is illegal, that it is executed in defiance of the law, the law will presume bad faith, while the presumption will be in favor of good faith until rebutted, when the deed is not prohibited by the law, and purports to convey title. But a purchaser from the grantee in this deed would not be held to notice of the illegality appearing on its face. On this question we adhere to our former decisions. Neither, if this deed had been made after the expiration of the time of redemption, would it be

void as color of title by defects in the proceedings which would vitiate it as paramount title. We hold it not to be color, because we must hold the grantee was apprised by the deed itself, when he took it, that the sheriff had no right to execute it.

The remaining objection is that the court refused to receive the instructions asked by the defendant, on the ground that they were not presented in apt time under the rule of the court.

The rule, as set out in the bill of exceptions, required the instructions to be presented to the court before the close of the argument to the jury. These instructions, it appears, were so presented; they were handed to the court before the counsel for plaintiff had closed, and the court declined to receive and act on them. This was error, and, if the instructions were proper, and should have been given, the judgment ought to be reversed. We have examined the instructions, and we think they should not have been given.

The law of the case is embraced in the instructions asked by the plaintiff, which the court also refused to give, they not having been presented within the rule. These instructions are as follows:

"If the jury believe, from the evidence in this case, that McKnight and Brady had a deed from Pensonneau for lands, which covered the land in question, and built a mill on a part of said lands, the same surveys of which the land in question is a part (surveys 123 and 124), which mill was built by them or their employees, and exercised acts of ownership over said lands, and were in possession of part of the whole tract, claiming title to the whole tract, and laid off a town (Illinoistown) thereon, of which the land in question is a part, and if title from them by deeds had been transferred to plaintiff before this suit was brought, then the jury should find for the plaintiff."

A title to land may be proved in this State by showing possession of a part of the land, under a deed which includes more land, with claim of ownership to the whole, and such a title is good against all persons who cannot show a title from the

United States, or from some one having a prior possession,—that the one claiming under the oldest possession, under paper color of title, has the best right.

To show a foundation by possession of a part, with a deed for the whole coupled with- it, it is not necessary to show such possession lasted twenty years.

The authorities referred to above fully establish these propositions.

Perceiving no error in the record the judgment .must be affirmed.

*Judgment affirmed.*