PERRY SEXSON

*v.*

MARY ANN BARKER.

*Opinion filed April 21, 1898.*

1. COLOR OF TITLE—*master's deed under decree of specific performance is color of title.* A master's deed executed under a decree for specific performance of an oral contract to convey the land constitutes color of title.

2. SAME—*party presumed to have acquired color of title in good faith.* One acquiring color of title is presumed to have acted in good faith, which presumption must be overcome, in order to establish bad faith, by evidence showing a design to defraud the party having the better title.

3. SAME—*deed may constitute valid color of title though based on a void decree.* A deed may constitute valid color of title though it fails to pass the absolute title, and though, in the absence of fraud, it is based on an erroneous, or even void, decree.

4. SAME—*what not sufficient to show bad faith in obtaining color of title.* The fact that a deed constituting color of title was based on a decree requiring specific performance of an oral contract concerning the land, or that the decree might have been reversed for failure to preserve the evidence in the record, or that the court acted without jurisdiction, does not show bad faith in procuring the deed.

5. FORMER CASES—*doctrine of Bowman v. Wettig, 39 Ill. 416, has not been followed in later cases.* The doctrine announced in *Bowman* v. *Wettig*, 39 Ill. 416, that one who accepts a deed as color of title to which he knows he is not entitled under the law cannot be considered as acquiring such color of title in good faith, has not been adhered to in later cases.

APPEAL from the Circuit Court of Shelby county; the Hon. SAMUEL L. DWIGHT, Judge, presiding.

HAMLIN & KELLEY, for appellant:

Any deed which on its face purports to convey title, founded on no matter what, is color of title under the statute. *Nelson* v. *Davidson*, 160 Ill. 254; *Morrison* v. *Norman*, 47 id. 477; *Fagan* v. *Rosier*, 68 id. 84; *Brian* v. *Melton*, 125 id. 647; *Brooks* v. *Bruyn*, 35 id. 392; *McCagg* v. *Heacock*, 34 id. 476.

The question of good faith is one of fact. *Woodward* v. *Blanchard*, 16 Ill. 424; *Smith* v. *Ferguson*, 91 id. 304.

Color of title is always presumed to have been acquired in good faith until the contrary appears, and bad faith is not to be presumed in the absence of proof. *McConnel* v. *Street*, 17 Ill. 253; *Fagan* v. *Rosier*, 68 id. 84; *Stumpf* v. *Osterhage*, 111 id. 82.

Where there is no actual fraud, and no proof that the color of title was acquired in bad faith, it will be held to be acquired in good faith, notwithstanding the party acquiring it has notice of defects in it which prevented it being an absolute title. *Russell* v. *Mandell*, 73 Ill. 136; *McCagg* v. *Heacock*, 34 id. 479; *Rawson* v. *Fox*, 65 id. 200; *Smith* v. *Ferguson*, 91 id. 304.

Good faith in the acquirement of title, within the meaning of the statute, does not require ignorance of an adverse claim or of defects of title. Notice, actual or constructive, is of no consequence. *Chickering* v. *Failes*, 26 Ill. 507; *Coleman* v. *Billings*, 89 id. 183; *County of Piatt* v. *Goodell*, 97 id. 84; *Davis* v. *Hall*, 92 id. 85.

It makes no difference whether the want of authority appears upon the face of the instrument or *aliunde*. *Brian* v. *Melton*, 125 Ill. 647; *Brooks* v. *Bruyn*, 35 id. 392.

A master's deed may constitute color of title although the decree is void. *Reedy* v. *Camfield*, 159 Ill. 254.

Fraud, to constitute bad faith, must always be proven. *McConnel* v. *Street*, 17 Ill. 253.

Ignorance of law cannot have the effect to destroy color of title, if acquired in good faith. *Hardin* v. *Crate*, 60 Ill. 215; *Huls* v. *Buntin*, 47 id. 396; *Hinkley* v. *Greene*, 52 id. 223.

In order to claim under color of title it is not necessary to show judgment. *Winstanley* v. *Meacham*, 58 Ill. 97; *Dickenson* v. *Breeden*, 30 id. 279.

A parol agreement may constitute a sufficient color of title. *Woodward* v. *Blanchard*, 16 Ill. 424; *McClelland* v. *Kellogg*, 17 id. 498.

Where the court has jurisdiction of the parties and the subject matter, its judgments and decrees cannot be impeached collaterally by parties or privies. 1 Black on Judgments, secs. 245, 246; *Harris* v. *Lester*, 80 Ill. 307.

The judgment of a court having jurisdiction is not rendered void or open to collateral attack because of a wrong judgment, based upon an erroneous application of legal principles or insufficient evidence. 1 Black on Judgments, secs. 261-268.

THORNTON & RICHARDSON, for appellee:

A party who accepts a deed to which he knows he is not entitled under the law cannot be considered as acquiring the color of title which such deed, if he was entitled to it, would give him, in good faith. *Bowman* v. *Wettig*, 39 Ill. 417.

A party receiving color of title in fraud of the owner's rights, although he holds the color and asserts the claim, cannot render it availing because of the want of good faith. *Hardin* v. *Gouveneur*, 69 Ill. 143.

Ignorance of the law excuses no one,—and this applies equally in the administration of criminal, common law and equitable justice. *Goltra* v. *Sanasack*, 53 Ill. 458; *Fowler* v. *Black*, 136 id. 379.

Before a decree can pass against an infant defendant in chancery, full proof must be made against him and that proof preserved in the record or decree. No presumption can be indulged that proof was made against the infant unless it is shown by the record. *Chaffin* v. *Heirs of Kimball*, 23 Ill. 35.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Free Sexson died intestate about February 22, 1843, seized of the lands involved in this case, and leaving Polly Sexson, his widow, and eleven children, his heirs-at-law. After his death, Isaac Free Sexson, one of the

children, died in infancy, intestate, and the interest of that child in the premises passed to the mother, Polly Sexson, and the brothers and sisters, as heirs-at-law. Another of the heirs, Churchwell H. Sexson, died intestate in February, 1852, two months before the birth of . appellee, his only child, who inherited his interest. Polly Sexson, the widow, conveyed by deed to Perry Sexson, appellant, who was one of the heirs, the share in the lands which she inherited from her infant child, Isaac Free Sexson, and all the others heirs, except appellee, also conveyed by their deeds their respective interests in the premises to appellant. Appellee began this suit in 1896, by filing her bill for partition and for an accounting of rents and profits. Appellant answered that he acquired the share claimed by appellee under a decree for the specific performance of a contract for the purchase of the same made by him with Churchwell H. Sexson, appellee's father, and a conveyance by a master in chancery, in pursuance of said decree, on April 9, 1853; that he had been in actual, adverse and notorious possession of the real estate from that day, and had made valuable improvements thereon, and that he had paid the taxes while so in possession under said deed. There were other defendants to the bill, but it was dismissed as to them on the hearing, and there was a decree in favor of appellee for the partition of the premises.

It was proved at the hearing that the defendant, Perry Sexson, in the fall of the year 1851 made a verbal contract with complainant's father, Churchwell H. Sexson, for his interest in the lands for $65, which was all that the interest was worth at that time. About one-fourth of the purchase money was paid in cash, but Churchwell H. Sexson died before the balance was paid or a deed made. After his death defendant filed his bill in chancery against complainant for the specific performance of that contract. A guardian *ad litem* was appointed for complainant as defendant in that suit, and the court, having

heard the proof, entered a decree for the specific performance of the contract, and the execution of a deed by the master in chancery upon the payment of $47.50, the balance found to be due. The money was paid to the master and the deed executed. Defendant was appointed guardian of complainant, and held the money as such until her majority, when he paid it to her, with interest, in October, 1870, amounting to $84.16, and settled his account as her guardian. After the death of Free Sexson, his widow, Polly Sexson, continued to live in the old homestead on the premises. Defendant moved on the land in November, 1857, and lived in a small house which he built until 1860, when he exchanged houses with his mother and moved into the old homestead. Complainant lived with her grandmother, Polly Sexson, until her marriage, when sixteen or seventeen years of age, and she then went to live with her husband. About the year 1872 or 1873 the widow abandoned housekeeping and became a member of defendant's family, and so remained until her death, in 1887. Defendant built a new house in 1876 on the premises and lived on the land continuously, and paid the taxes from 1857 until the commencement of this suit, in 1896. Complainant lived near the lands for twenty years before filing her bill, during all of which time defendant was in possession and claiming ownership.

It will only be necessary to consider the defense of color of title and payment of taxes for seven years while in possession of the premises. There is no doubt that the deed to the defendant from the master in chancery constituted color of title, and the only controversy between the parties is whether it was acquired in good faith. The good faith of the defendant is a question of fact, and in the absence of evidence to the contrary it will be presumed. Bad faith will not be presumed, but must be established by proof. (*McConnel* v. *Street,* 17 Ill. 253; *McCagg* v. *Heacock,* 34 id. 476; *Brooks* v. *Bruyn,* 35 id. 392; *Morrison* v. *Norman,* 47 id. 477; *Stumpf* v. *Osterhage,*

111 id. 82.) In order to overcome this presumption the evidence must show a design to defraud the person having a better title, and in this case there is an absence of evidence tending to prove that fact. There is nothing in the testimony which casts any suspicion of fraudulent intent upon the defendant or his motives, or that tends to show any design on his part to defraud the complainant in any manner. The contract was made with complainant's father, and the price agreed upon was the full value of the interest purchased. Defendant carried out the contract in good faith, and the only ground alleged by counsel for imputing bad faith to him consists of certain objections to the proceedings in the suit for specific performance. These objections are not sufficient to show bad faith. It will not suffice for that purpose to point out that the contract was a verbal one and subject to a defense for that reason, or that the decree might have been reversed because the evidence was not preserved in the record, or that the court acted without jurisdiction. The fact that a deed fails to pass an absolute title is not material, and the fact that it is made under a decree which was erroneous, or even void, in the absence of fraud, will not affect the defense under the Statute of Limitations. *Huls* v. *Buntin*, 47 Ill. 396; *Hinkley* v. *Greene*, 52 id. 223; *Reedy* v. *Camfield*, 159 id. 254.

It is claimed that the cases of *Bowman* v. *Wettig*, 39 Ill. 416, and *Dalton* v. *Lucas*, 63 id. 337, establish the doctrine that defendant was bound to know the law and to know that the verbal contract for the land could not be enforced, and that the decree for its enforcement was erroneous, and therefore he was guilty of bad faith in so acquiring the deed. Such a doctrine would abrogate the statute and require the party claiming its benefit to establish a valid title, and in the case of *Davis* v. *Hall*, 92 Ill. 85, it was said that the apparent teachings of the opinion in *Bowman* v. *Wettig, supra,* had not been adhered to in the later cases. The decision in *Dalton* v. *Lucas* was based on

the prior case of *Bowman* v. *Wettig*, but if given full effect it could not influence the decision in this case. That case involved a knowing and intentional omission by a purchaser at a tax sale to give a notice required by the statute, and thereby keep the owner in ignorance of his rights, and it has no application here.

The decree of the circuit court is reversed, and the cause is remanded to that court with directions to dismiss the bill.

*Reversed and remanded.*