**HONEYMAN et al. v. ANDREW et ux.**

No. 17300—Opinion Filed Dec. 7, 1926.

Rehearing Denied March 1, 1927.

1. Quieting Title—Ejectment—Right of Action Against Holder of Tax Sale Certificates by Landowner After Redemption.

Where lands have been sold for taxes as provided by law and the owner and holder of the tax sale certificates serves notice upon

the record owner of the lands that such holder of the certificates will, at the expiration of 60 days from the date of service of the notice, apply to the county treasurer for a tax deed to such lands unless the record owner shall within such 60 days redeem the lands by paying the sums due for taxes and statutory interest and cost, and such record owner redeems such land within the statutory period, in an action brought to quiet title and for possession, such record owner is entitled to possession of the land, and to have his title thereto quieted against the holder of such certificates.

**2. Adverse Possession—Possession under Tax Sale Certificate not Adverse.**

Possession under a tax sale certificate is, during the period of redemption, an admission that the possession is subject to the owner's right of redemption, and is not adverse to the true owner.

**3. Adverse Possession—Requisites—Claim of Right or Color of Title.**

For adverse possession to be effective it must not only be hostile to the title of the true owner, but, in addition thereto, it must be either under a claim of right or under some color of title. Mere naked possession or occupancy of the premises, no matter how long, without a claim of right or color of title cannot ripen into a good title, but must always be regarded as being an occupancy for the use and benefit of the true owner. To constitute the basis for adverse possession, the entry upon the property must be accompained by a claim of right.

**4. Same—Proof—Presumptions.**

The doctrine of adverse possession is to be taken strictly. Such possession is not to be made out by inference, but by clear and positive proof. Every presumption is in favor of possession in subordination to the title of the true owner.

**5. Same—Continuity of Adverse Possession Broken by Recognizing Other's Title.**

If, at any time prior to the expiration of the period of adverse possession, the one in possession recognizes the title which he seeks to defeat by his hostile holding, it operates to break the continuity, which is one of the essentials of adverse possession.

**6. Taxation—Tax Sale Certificates—Rights of Holder—Satisfaction of Lien by Record Owner.**

Where lands are sold for taxes, the owner and holder of the tax sale certificates is not vested with the legal title to the land, but such holder of the certificates has a lien upon the land, which lien is satisfied by the payment by the record owner of the land of the sums due for taxes plus the statutory interest and expenses.

**7. Quieting Title—Ejectment — Right of Record Owner to Judgment.**

Record examined, and held, plaintiffs are entitled to judgment quieting title as against defendants and for possession.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Payne County; C. C. Smith, Judge.

Action by Frank O. Honeyman and others against R. N. Andrew and Florence Andrew, husband and wife, to recover possession of real property. Judgment for defendants, and plaintiffs appeal. Reversed with directions.

John P. Hickam and Geo. A. Hoke, for plaintiffs in error.

Wilcox & Swank, for defendants in error.

Opinion by RUTH, C. On December 15, 1924, plaintiffs filed their action against R. N. Andrew and Florence Andrew, husband and wife, and allege in their petition that plaintiff F. O. Honeyman is a son of George W. Honeyman, deceased, and a grandson of Sarah J. Honeyman, deceased. The petition then alleges the other plaintiffs are heirs of Sarah J. Honeyman, by reason of the fact that they are the children of Sarah J. Honeyman, deceased, or the children of the deceased children of Sarah J. Honeyman, deceased, and as such they allege they are the legal and equitable owners of lots 17, 18, 19, and 20, in block 55, city of Stillwater, and are entitled to the immediate possession of the real property described.

Plaintiffs deraign title through a patent issued by the United States government on November 1, 1890, to Daniel J. McDaid, and by mesne conveyances through several parties to Sarah J. Honeyman, who died in December, 1901, and whose will was duly probated in the county court of Payne county. The petition further alleges the execution of certain quitclaim deeds by the other heirs to these plaintiffs, being nine in number, all direct lineal descendants of Sarah J. Honeyman, and allege defendants unlawfully keep plaintiffs out of possession of the lands, and plaintiffs pray judgment for possession.

To this petition defendants demurred, alleging the court was without jurisdiction of the cause of action; that the petition did not state facts sufficient to constitute a cause of action, and specifically pleading the statute of limitations.

The demurrer being overruled, defendants

saved their exception and defendants filed their joint answer in which they admit being in possession of the lands, and for their cross petition allege they are the owners of the lands and have been in possession of the same for 22 years; that they went into possession under a claim of ownership; that their possession has been adverse, actual, notorious, continuous and exclusive, and they have paid the taxes thereon for the past 21 years; that they have fenced the land, built a corn crib, dug a well and constructed a wind-mill, and about 12 years prior to the filing of this action, defendants erected a barn on the lands. That during all this time, the heirs of Sarah J. Honeyman have had notice that the defendants were in possession of, and claiming title to the lands and paying taxes thereon, and their title has ripened into a legal title by reason of adverse possession for more than 15 years, and pray their title be quieted.

Plaintiffs for reply and answer to answer and cross petition of defendants, deny generally and specifically, and further allege that on the 6th day of November, 1911, the county treasurer of Payne county purchased, in the name of the county, tax certificates numbered 221, 222, 223, and 224 for 1910 taxes, covering the lots in controversy, and on January 3, 1912, these certificates were purchased by the defendants and assignments taken in the name of F. E. (Florence) Andrew, and defendants caused the taxes for the years 1912-1913 to be indorsed on said certificates, and thereafter, on the 22nd and 27th days of August, 1921, defendants served notice on plaintiffs that defendants were the owners of the certificates, and unless the plaintiffs redeemed the same by paying the principal sum due, plus statutory penalties, within 60 days after notice, defendants would demand of the county treasurer a tax deed to said lands. Plaintiffs then allege that they complied with the terms of the notice by paying to the county treasurer the sum due, including penalties, and received of the county treasurer tax sale redemption certificates numbered 180, 181, 182, and 183 covering the lands in controversy. A copy of the notice to redeem served personally upon plaintiffs and a copy of the notice served by publication is attached to and made a part of plaintiffs' reply.

The cause was tried to the court and judgment rendered dismissing the action as to Florence Andrew and decreeing the husband, R. N. Andrew, to be the legal owner of the lands, by reason of his adverse possession thereof for more than 15 years

prior to the filing of the action, and making the improvements as set forth in defendants' answer, and further specifically finds R. N. Andrew has been in actual, adverse, notorious, continuous, and exclusive possession of the lands for more than 15 years prior to the issuance of the notice to redeem, served upon plaintiffs in 1921, from which judgment plaintiffs, after motion for new trial was overruled, duly appealed the cause to this court, and present their cause upon petition in error and case-made.

Plaintiffs present several assignments of error and argue them under four "points" or propositions, and the first we shall consider is the alleged error of the court in dismissing plaintiffs' action as against the defendant Florence Andrew. It is conceded Sarah J. Honeyman was the last record owner of the lands involved, and plaintiffs claimed as heirs. The will of Sarah J. Honeyman was duly admitted to probate in January, 1902, naming some 18 heirs, children and grandchildren of deceased, and final distribution of the estate decreed.

No question is raised as to the heirship of plaintiffs, and their heirship is conclusively established by the records of the county court in proper probate proceedings. Plaintiffs allege defendants were in possession of the lands, and defendants filed their joint answer admitting they were in possession of the lands and had been for more than 15 years next preceeding the filing of the action, and plead the statute of limitations. Florence Andrew did not appear as a witness, but her husband, R. N. Andrew, appeared and testified and the evidence discloses that about 1906 these lands were sold for taxes and purchased by the county treasurer for the county, and afterwards the tax sale certificates were purchased by T. J. Hoyt on November 19, 1906, from H. C. Jerome, county treasurer, the consideration being $9.30. On April 16, 1908, Hoyt assigned the tax sale certificates to Florence E. Andrew, the consideration being $11.90, On these tax sale certificates appears the indorsement:

"Tax certificate of purchase of property sold for delinquent taxes for the year 1911-Taxes $9.44, Paid Jan. 3, 1912."

Then follows a notation of the receipt of taxes for the years 1907-1908-1909-1910.

R. N. Andrew testifies he purchased these tax certificates for his wife, Florence Andrew, but he paid the taxes, and also testifies he paid the taxes in 1912 for the years up to and including the year 1910, but not however, until the lands had again been

sold for taxes on November 6, 1911, and bid in for the county by Geo. Dollinger, county treasurer, and the record shows that Florence Andrew paid $3.75 to the treasurer on January 3, 1912, and the treasurer's receipt contains the following:

"The said purchaser will be entitled to a deed for said property on the 6th day of November, 1913, unless the same shall have been redeemed by law."

This is in conformity to section 6195, Gen. Stat. Okla. 1908. It will thus be seen, the lien for taxes remained in the county until the transfer January 3, 1912.

Section 6204, G. S. O. 1908, provides the county treasurer may issue a tax deed to the purchaser unless the property be redeemed within two years from the date of sale. Section 6205, G. S. O. 1908, provides:

"Before any holder of a certificate of purchase issued at any tax sale of real estate shall be entitled to a deed as provided by section 6204, he shall cause a written notice to be served upon the owner of the land in the county wherein sale took place, * * * which notice shall recite the sale of said lands, specifying the date of such sale, and notifying such persons that unless redemption is made from such sale within sixty days after the date of service of such notice, a tax deed will be demanded and will issue as provided by law."

The statute further provides for notice by publication on nonresidents of the county.

No effort was made by either of the defendants to obtain a tax deed until August 22, 1921, when defendants caused notice to be served upon plaintiffs that defendant F. E. Andrew was the owner and holder of tax sale certificates numbered 221, 222, 223, and 224, covering lots 17, 18, 19, and 20, block 55, city of Stillwater. That the said lots had been sold for taxes on the 6th day of November, 1911, and had been bid in by the county treasurer for Payne county, and had, on the 3rd day of January, 1912, been assigned to F. E. Andrew, and further notified plaintiffs that unless the lands were redeemed by the payment of the sums due plus 18% interest, and within 60 days from date of the notice, a tax deed would be demanded of the treasurer of Payne county.

The record discloses that within the time stated in the notice, plaintiffs paid to the county treasurer the sums demanded by defendant, including interest and charges, advertising fees, etc. and received the tax sale redemption certificates duly certified by the county treasurer of Payne county, and the record discloses that thereafter plaintiffs paid the taxes on the lots for the ensuing years.

This action was filed in December, 1924, and defendants describing themselves as husband and wife, filed their joint answer on February 27, 1925, in which they admit they are still in possession of the lands, and claim ownership by virtue of possession for a period of 20 years. It further appears from the record that after defendants obtained the tax sale certificate from the county treasurer in 1921, they (defendants) failed to pay the taxes for the ensuing years and the lands were again sold for taxes in 1919 and purchased by the county and subsequently redeemed by F. E. Andrew, and after R. N. Andrew had consulted his attorneys, the notice to redeem was served upon the plaintiffs, who promptly paid the money demanded.

It appears further from the record that defendants knew who owned the lands, and in 1908 defendants had a deed prepared. and attempted to have the heirs of Sarah J. Honeyman convey the lands to defendant, but a number of heirs were minors and they were unsuccessful, and R. N. Andrew testifies that he then determined to "fight it out" with the heirs and obtain a tax title, which he never attempted to do until 1921. He further testified he claimed those lots by possession and paying taxes on them, and that he claimed ownership after purchasing the first tax sale certificates or "shortly afterwards" that he had been trying to get title to the lands by buying tax sale certificates and fighting the heirs. "They could figure it out any way they wanted to." It further appears that on May 12, 1913, in his sworn statement of taxable property in Payne county, the property involved herein is not listed and defendants never claimed ownership by having the property listed in their names until 1921, when R. N. Andrew listed the lots in controversy in his own name and placed a value thereon of $93 each, with personal property consisting of "household furniture and private libraries $100," upon which he claims $100 exemption, leaving as his taxable personal property an imposing array of ciphers.

Section 6195, G. S. O. 1908 (sec. 7403, R. L. 1910; sec. 9737. C. O. S. 1921), provides in part:

"The purchaser shall have a lien upon the land for the delinquent taxes, and if he subsequently pays the taxes levied on the same. whether levied for one year or years previous or subsequent to such sale, he shall have the same lien for them and may add

them to the amount paid by him in the purchase," etc.

Under this section of the statute, construing it with section 6199, G. S. O. 1908 (sec. 7413, R. L. 1910; sec. 9747, C. O. S. 1921), wherein it is provided:

"The owner of any land sold for taxes, or any person having legal or equitable interest therein may redeem the same at any time within two years after the day of such sale or at any time before the execution of a deed of conveyance therefor by the county treasurer by paying the county treasurer for the use of the purchaser, his heirs, or assigns, the sum mentioned in the certificate with interest." etc.

—and construing it with section 6205, G. S. O. 1908 (sec. 7415, R. L. 1910; sec. 9749, C. O. S. 1921), requiring notice to be served upon such owner at least 60 days before the tax deed shall be issued, it is evident the owner and holder of such tax sale certificate acquires no title to the land until such tax deed is issued, but simply retains a lien for the principal sum, plus interest and costs, which lien may be satisfied by the owner paying to the county treasurer the sum shown to be due and within 60 days of service of the notice.

Section 6202, G. S. O. 1908 (sec. 7413, R. L. 1910: sec. 9747, C. O. S. 1921), specifically provides:

"That infants, idiots and insane persons may redeem any land belonging to them sold for taxes, within one year after the expiration of such disability"

—and further provides:

"That when the owner of any land which has been sold for taxes, and who shall desires to redeem the same, shall not demand a receipt or certificate of purchase of redemption from the county treasurer, the return of the certificate of purchase shall operate as a release of all claims to the tract or lot described therein, under or by virtue of the purchase."

The terms of the statutes are plain and unambiguous and susceptible of but one construction, and where lands have been sold for taxes by the county treasurer as provided by law, and the owner or holder of the tax sale certificates being in possession of the lands so sold, serves notice upon the owner of the land that the holder of such certificate will, at the expiration of 60 days from the date of the notice, apply to the county treasurer for a tax deed to such lands, unless the owner, before the expiration of the said 60 days, shall redeem the land by paying the sums specified in the notice, and prior to the expiration of the

said 60 days the owner shall pay to the county treasurer the amount set forth in the notice, the owner is entitled to possession of the lands so redeemed. The defendant F. E. Andrew, admitting in her answer she was in possession of the lands, under the evidence in this case, the judgment of the court dismissing the plaintiffs' action as to F. E. Andrew was erroneous.

After dismissing the action as to F. E. Andrew, the court found R. N. Andrew was the legal owner of the land by reason of his adverse possession for more than 15 years prior to the 22nd day of August, 1921, the date of the service of notice to redeem, that his possession has been actual, notorious, continuous, and exclusive under a claim of ownership.

The judgment is not sustained by the law or the evidence. While in defendants' answer he alleges ownership and a legal title by reason of adverse possession, his own testimony discloses he was first holding by permission of George W. Honeyman, son of Sarah J. Honeyman and father of F. O. Honeyman, one of the plaintiffs. Defendant testifies there formerly was a small house on the lots; that George W. Honeyman removed the house about 1904 or 1905, and after George W. Honeyman and defendant had a conversation about the lots, defendant went into possession of said lots.

"Q. Then from the time you entered upon the premises until you began to assert ownership, were you occupying the premises as a trespasser or by permission of anybody?

"A. There was a time I was occupying them by permission.

"Q. By permission of who?

"A. Mr. Honeyman.

"Q. George W. Honeyman?

"A. Yes, sir.

"Q. And I will ask you if you wasn't trying to get a deed in 1905 from these heirs?

"A. Yes, sir, I had made a deal with Honeyman, had a conversation with him, and A. W. Swope was the real estate man, and I made a contract and put up $25 in money to buy these lots at $200 and they sent the deed away and some of the heirs wouldn't sign it and it come back and Mr. Honeyman says. 'Bob, they won't sign it, take these lots and fight it out with them the best you can,' and ever since that day I claimed those lots by possession and paying taxes on them.

"Q. You was trying all the way down from 1906 to 1921 to get title to this property?

"A. Certainly, that is what I took possession of them for under the conversation with George Honeyman.

"Q. And that is what you started out to do, was to fight it out with them and go down the line and get title to them?

"A. I told you that it is.

"Q. And the way you was going to fight it out was by buying tax sale certificates and then get a tax deed?

"A. You can figure it any way you want to; I have told you what I was doing."

George W. Honeyman was one of the owners of this property as an heir of Sarah J. Honeyman, and the defendant going into possession by consent of one of the owners, he was at best a tenant by sufferance or at will, and it was not until April 16, 1908, that defendant, after permitting the lands to be sold for the 1905 taxes in 1906, purchased the tax sale certificates from Hoyt, and defendant states that at the time of the purchase from Hoyt **"or shortly afterward"** he was claiming ownership. Defendant thereafter in 1911 and again in 1919 permitted the lands to be sold for taxes, and in 1921, witness prepared and served notice hereinbefore mentioned, after consultation with his attorneys, and that he took this procedure to obtain title, but at the time he served the notice he did not want the heirs to pay the back taxes, and when they did pay them according to the terms of the notice, he refused to deliver possession of the property. Up to this point we have considered no testimony but that of the defendant R. N. Andrew and are of opinion it clearly proves defendant fenced the land and used it as a garden and pasture (it being immediately across the alley from defendants' residence) by permission of George W. Honeyman, and by his own evidence, he claimed ownership **after** he purchased the Hoyt certificates in 1908, being less than 15 years before he notified plaintiffs to come in and redeem the property in 1921, and without reiterating or restating the statutes, we are of opinion the law with reference to F. E. Andrew's title is equally applicable to R. N. Andrew, and his claim to title by prescription or adverse possession is untenable.

In Wade v. Crouch, 14 Okla. 593, 78 Pac. 91, it is said:

"For adverse possession to be effective it must not only be hostile to the title of the true owner, but, in addition thereto, it must be either under a claim of right, or under some color of title. Mere naked possession or occupancy of the premises, no matter how long, without a claim of right or color of

title cannot ripen into a good title but must always be regarded as being an occupancy for the use and benefit of the true owner. To constitute the basis of an adverse possession the entry upon the property must be accompanied by a claim of right." See 1 A. & E. Ency. L. (2nd Ed.) 789; 1 Cyc. 1026.

And the Supreme Court of Utah, in passing upon the exact question as confronts this court, said:

"Possession under a tax sale certificate is, during the period of redemption, an admission that the possession is subject to the owner's right of redemption, and it is not adverse to the true owner." Salt Lake Investment Co. v. Fox (Utah) 90 Pac. 564; citing Pease v. Lawson. 33 Mo. 35; McKeighan v. Hopkins, 14 Neb. 361, 15 N. W. 711; Borman v. Wettig, 39 Ill. 416.

The Supreme Court of Washington. in Cameron v. Bustard, 205 Pac. 385, said:

"One who went into possession of vacant property, and thereafter in complaint in tax foreclosure proceeding, did not hold such property under a claim of right as against the record owner."

In Bessler v. Powder River Gold Dredging Co. (Ore.) 178 Pac. 237, the court said:

"If, at any time prior to expiration of the period of adverse possession, the one in possession recognizes the title which he seeks to defeat by his hostile holding, it operates to break the continuity which is one of the essentials to adverse possession."

In Flescher v. Callahan et al., 32 Okla. 283, 122 Pac. 489, this court said:

"The doctrine of adverse possession is to be taken strictly. Such possession is not to be made out by inference, but by clear and positive proof. Every presumption is in favor of possession in subordination to the title of the true owner."

It is not necessary to here discuss the question of title by prescription as such title always presupposes a grant. Randel et al. v. Heckman, 114 Okla. 190, 245 Pac. 589; Pauls Valley Nat. Bank v. Foss, 99 Okla. 178, 226 Pac. 567; 2 Blackstone Com. (Lewis, 2nd Ed.) 265; Arnold v. Mundy, 6 N. J. Law, 167, 10 Am. Dec. 356; Hume v. Rogue River Packing Co. (Ore.) 92 Pac. 1065.

The notice served upon plaintiffs by these defendants mentions these plaintiffs as "record owners" of the land, and that defendants are owners and holders of certain tax sale certificates covering plaintiffs' lands, and requires plaintiffs to come in and redeem within 60 days, which plaintiffs accordingly did. In view of the statutes of this state and the cases herein cited and from the

record evidence of defendant, plaintiffs were clearly entitled to possession and to have their title quieted in the lands.

The judgment of the trial court in dismissing plaintiffs' action as to F. E. Andrew is therefore reversed and remanded to the trial court with directions to reinstate the cause, and to enter judgment against defendant F. E. Andrew and in favor of plaintiffs.

The judgment of the trial court in favor of R. N. Andrew is reversed and remanded to the trial court with directions to enter judgment in favor of plaintiffs and against the defendant R. N. Andrew, and forever quieting the title to the lands in controversy in these plaintiffs as against the claims of R. N. Andrew and F. E. Andrew.

By the Court: It is so ordered.