---

(No. 14942.—Reversed and remanded.)
THE DUCK ISLAND HUNTING AND FISHING CLUB, Appellant, *vs.* CHESTER L. WHITNAH *et al.* Appellees.

*Opinion filed December 19, 1922—Rehearing denied Feb. 9, 1923.*

1. LIMITATIONS—*possession of part of premises under a deed constitutes possession of entire tract conveyed.* Possession of part of the premises conveyed by deed constitutes constructive possession of all the premises conveyed which were not in the adverse possession of some other person.

2. SAME—*what must be shown to make out title by adverse possession.* Parties relying upon mere naked possession as the foundation of their title as against others claiming title by possession under a deed must show an actual occupancy or possession which is visible, exclusive, continuous and adverse, and evidence of such possession cannot consist of mere acts of trespass or permissive use.

3. SAME—*when the claimants by adverse possession cannot rely upon possession of their grantor.* Parties who must rely upon adverse possession as the foundation of their claim to a disputed tract adjoining their land cannot rely upon the possession of their grantor, who did not have title to the disputed land, where the deed from said grantor does not include the land in controversy but only the land to which the grantor had title, as the privity between two

disseizors which will authorize tacking their possessions is not necessarily established by a deed from one to the other.

4. SAME—*when grantees are entitled to continue possession of grantor over adjoining land.* Where a person having title by deed to a lot or tract of land encloses with it and takes possession of adjoining land to which he has no record title and conveys the land by the description in the deed which he delivers to the grantee together with the possession of the entire enclosure, the continuity of possession is not broken and the two possessions will be joined and considered as one continuous possession.

5. SAME—*trespassers cannot set up an outstanding title in third party against party in possession.* Parties who enter upon land in the possession of another are mere trespassers and as such cannot set up an outstanding title in a third person against the claim of the person in possession.

6. EMINENT DOMAIN—*when cross-petitioners are entitled to a finding of title in them.* In a proceeding by a drainage district to condemn land to be used for ditches of the district, the defendants who file a cross-petition and prove possession of certain of the tracts under deeds are entitled to a finding that title is vested in them as against other defendants who have also filed a cross-petition but who rely solely upon adverse possession not shown to have been exclusive, adverse and continuous for twenty years.

APPEAL from the County Court of Fulton county; the Hon. HOBART S. BOYD, Judge, presiding.

QUINN & QUINN, (HORTON & McLAUGHLIN, of counsel,) for appellant.

CLARENCE W. HEYL, and HARRY C. HEYL, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Wakonda Drainage and Levee District, in Fulton county, was organized in 1919, and in June, 1921, the commissioners filed in the county court an assessment roll and their petition for the condemnation of certain land to be used for the ditches of the district. Chester L. Whitnah, Perle W. Rohrer and the Duck Island Hunting and Fishing Club were made defendants to the petition for condemna-

tion as owners of a portion of the land sought to be condemned. The Duck Island Hunting and Fishing Club filed its cross-petition claiming ownership of certain tracts, a part of which was sought to be condemned for the ditches and some of which was alleged to be damaged by the construction of the ditches of the district. Whitnah and Mrs. Rohrer also filed a cross-petition claiming ownership of certain of the tracts over which it was proposed to construct the ditches and certain other tracts which it was alleged would be damaged by the construction of the ditches. Six of the tracts were claimed by the petitioners in each cross-petition and an issue was made as to the title and ownership of these tracts. This issue was tried by the court, and an order was entered finding the title to be in Whitnah and Mrs. Rohrer, and the Duck Island Hunting and Fishing Club has appealed.

Beebe or Duck island is a body of land west of the Illinois river of higher elevation than the surrounding lands, which are either swamp lands or entirely submerged. It extends northeast and southwest across sections 27, 33 and 34 in Banner township and section 4 in Liverpool township, in Fulton county, a distance of about two and one-half miles. At its widest part, about half way between its extremities, it is about three-quarters of a mile wide, narrowing toward either end. The Illinois river runs from the northeast to the southwest and is from a mile to a mile and a half east of the island. The appellees are the owners of the island. The appellant is the owner of the land adjoining the Illinois river between the river and the island. Its club house is nearly opposite the center of the island. The six tracts of land in controversy are: The southeast quarter of the southeast quarter of section 27; the southwest quarter of the northeast quarter of section 34; the southeast quarter of the southwest quarter of section 34; the southeast quarter of the northeast quarter of section 4; the east half of the northwest quarter of the southeast quar-

ter and the southwest quarter of the northwest quarter of
the southeast quarter of section 4; and the south half of
the northeast quarter of the southwest quarter of section 4.
On the following plat these tracts are numbered for con-
venience of reference from 1 to 6.

All the land east of the east boundaries of these tracts
to the Illinois river is admitted to belong to the appellant.
All the land west of the west boundary line of these tracts
is admitted to belong to the appellees. These six tracts are
ordinarily all covered with water, as is the ground between

them and the island. The northwest corners of some of the tracts are very near the island, and it is claimed as to tracts 1 and 4 that portions of them are on the island.

Neither party has a record title going back to any recognized or proved owner or source of title. Martin Beebe was shown to have been in possession of the island as long ago as 1872 and continued in its possession up to the time of his death, in 1893. An inventory of his estate was filed specifically describing his land, which did not include the disputed tracts of land here. The description of his land in the inventory makes its east boundary the west boundary of the disputed tracts. During his lifetime Martin Beebe had executed a bond for a deed to his son, Henry Clay Beebe, for the lands lying north of a certain described line. After Martin Beebe's death his land was sold by his administrator under a decree of the county court, and the appellees, together with their mother, Mary Whitnah, became the purchasers. The interest of the mother has become vested in the appellees, who are now the owners of all the title conveyed by this deed. Under this deed the grantees acquired no title or color of title to any of the tracts in controversy. Neither the appellees nor any of their grantors ever had any title to any of these tracts, and the appellees had not even color of title until January 31, 1899, when Henry Clay Beebe made a warranty deed to Chester L. Whitnah and his mother of lands to which the grantor had no title, including all the tracts in controversy. Long before any of these deeds were made or the appellees or their grantors had any color of title the appellant had obtained conveyances of all the tracts in controversy, the deeds of conveyance including also, together with the tracts in controversy, the other tracts which have been mentioned lying between the tracts in controversy and the Illinois river, all together constituting a compact body of land, as indicated on the plat, of two thousand acres or more. The deeds conveying all these tracts, except No. 3, were obtained in

1886, and the deed for No. 3 in 1891. Immediately after these conveyances were obtained, the appellant, under its deeds, went into possession of the lands conveyed, erected a club house in 1887 or 1888, and has ever since maintained a club house on the land, two having been destroyed by fire but having been replaced. The club house was built on ground artificially raised, and other buildings were erected, a road built, and the members of the club and its licensees occupied the premises also by hunting, shooting and fishing. The grounds were a marsh, most of which was under water most of the time though out of the water when it was at a low stage. The appellant has paid the taxes on all the tracts in controversy since they were conveyed to it and the appellees have paid none.

The possession of the appellant of part of the premises under the deeds conveying the tracts in controversy to it constituted constructive possession of all the premises conveyed which were not in the adverse possession of some other person. Having entered under its deeds, its actual possession of a part extended its possession to the boundaries named in the deeds, except as to those parts of the premises in the actual possession of some other person. "A party who enters into the possession of land under a conveyance is presumed to enter according to the description therein, and his occupancy of a part, claiming the whole, is construed as a possession of the entire tract not in the adverse possession of another." (*Peoria and Pekin Union Railway Co.* v. *Tamplin,* 156 Ill. 285.) Thus, when the appellees obtained their color of title on January 31, 1899, by virtue of the deed from Henry Clay Beebe, the appellant had been in possession of the land in controversy for more than ten years. "A title to land may be proved in this State by showing possession of a part of the land under a deed which includes more land, with claim of ownership to the whole, and such a title is good against all persons who can not show a title from the United States or from someone

306—19

having a prior possession; that the one claiming under the oldest possession, under paper color of title, has the best right." (*Bowman* v. *Wettig,* 39 Ill. 416.) Since the appellant's possession under its deeds claiming title is *prima facie* evidence of title in fee simple, the appellees, who have no title but rely upon mere naked possession as the foundation of their claim, must show an actual occupancy of the premises. (*Peoria and Pekin Union Railway Co.* v. *Tamplin, supra; Ely* v. *Brown,* 183 Ill. 575; *Harms* v. *Kransz,* 167 id. 421.) The appellees must also rely upon their own possession. The evidence of the character of Martin Beebe's acts is of no consequence, except as it may tend to show that the appellant was not in possession of the tracts in controversy. There is no evidence that he ever claimed any title to any of these tracts. Whatever may have been the extent of his possession or claims, the appellees can claim no benefit from them. If he had any claim by virtue of adverse possession the appellees cannot claim the benefit of it. His administrator conveyed to them certain specifically described tracts of land, which did not include any of the tracts in controversy. They were not put in possession of these tracts by their grantor, and could not, by virtue of the administrator's deed, succeed to the title or possession of land not described in it.

Where a person having title by deed to a lot or tract of land described in the deed also has enclosed with it and is in possession of adjoining land to which he has no record title, and conveys the land by the description in the deed and delivers with it the possession of the entire enclosure, the continuity of possession will not be broken and the two possessions will be joined and considered as one continuous possession. This result, however, does not necessarily follow the making of the deed describing the land to which the grantor had paper title. The title to premises in possession but not described in the deed to the claimant does not depend upon a deed but upon possession alone, and for

that reason will not pass by a conveyance describing only the land to which the grantor has record title, but possession of the land not described in the deed must be delivered. The privity between two disseizors which will authorize tacking their possession is not, therefore, established by a deed from one to the other. (*Illinois Central Railroad Co. v. Hatter,* 207 Ill. 88; *Rich* v. *Naffziger,* 255 id. 98.) The appellees, if they went upon these tracts in the possession of the appellant, were trespassers, and as such could not even set up an outstanding title in a third person against the claim of the person in possession. (*Casey* v. *Kimmel,* 181 Ill. 154; *Anderson* v. *Gray,* 134 id. 550; *Anderson* v. *McCormick,* 129 id. 308.) The evidence of adverse possession cannot consist of mere acts of trespass or permissive acts. In order to make out a title by adverse possession it must be shown that there was an actual, visible, exclusive and continuous possession, and that it was adverse and made under claim or color of title. (*Zirngibl* v. *Calumet Dock Co.* 157 Ill. 430.) "The cutting of timber on unenclosed wild lands without anything to define the extent of the alleged claim is not, alone, such evidence of ownership as to amount to possession adverse to the true owner." (*Travers* v. *McElvain,* 181 Ill. 382; *Same case,* 200 id. 377.) The herding of cattle upon a piece of open land and sometimes cutting ice from it is not such adverse possession as is required to satisfy the Statute of Limitations. (*McCloskey* v. *Hayden,* 169 Ill. 297.) In Martin Beebe's lifetime he used practically all of the island for general farming and stock raising. In dry seasons he would turn his stock loose and they would range from the island to the river and from a mile north of the island as far as twelve or fifteen miles south. The stock of other people in the neighborhood ran loose with Beebe's stock, and all who chose could let their cattle range over this territory for wild feed in low-water time, and did so. Everybody hunted and trapped around there when they wanted to, and went down in the low, wet

marsh or out on the lake to shoot ducks. Anybody who wanted to fish or cut ice or firewood or timber there did so. This was the testimony of W. F. Harris, who had known the property since 1872 and worked there for fifteen or twenty years under Martin Beebe, and it is not disputed. After the appellees acquired their color of title they also were in possession of the island. They pastured cattle, and when the water was low extended their fences from the east side of the island into the water, so that the cattle could not go around the ends, the water being a barrier on the east side. The distance from the island to which the fences were extended and to which the cattle went varied with the season.

The evidence does not show any possession of any of the tracts in controversy by the appellees which was either exclusive, continuous or under any claim or color of title. It may be that at some time some of the appellees' cattle were upon a part of some of these tracts; but that is mere conjecture,—the evidence does not show it. The appellant, by its members and licensees, hunted and fished all over these waters,—those to which it claimed title and those which were claimed by the appellees. They had a license until 1907 from Martin Beebe to fish and hunt upon all parts of sections 26, 27, 28, 33 and 34 in town 6, and in sections 3 and 4 in town 5, in which Beebe had any interest. Both the appellant and the appellees were annoyed by poachers hunting, fishing and trapping on the marsh and in the waters between the river and the island, and they united in efforts to prevent these trespassers getting on any of the premises, the employees of each sometimes assisting the other in protecting the property. At one time, when the water was unusually low, the only route which the club members could use to Goose lake, at the south end of their property, was over property which the appellees owned. A dispute arose over their use of this route, which was settled by an agreement by which it was agreed that the ap-

pellant's members were to go over the appellees' water opposite the island to get down to Goose lake and were to have the privilege of fishing with hook and line at any time they wanted to, and the appellees were to have the privilege of fishing and trapping. The appellees, through their manager and others, did make use of the fishing and trapping privileges on the east side of the island, sometimes as far as eighty rods or more from the shore, and they also cut ice in front of the island, but the evidence does not show that these privileges were exercised on the land in controversy except by the permission of the appellant. The evidence does not show that for twenty years the appellees have been in the adverse possession of the tracts of land in controversy, and the court erred in finding the title to be vested in them.

The judgment will be reversed and the cause remanded to the county court, with directions to enter an order finding the title in the appellant.

*Reversed and remanded, with directions.*