**MERCANTILE NATIONAL BANK OF CHICAGO et al., Plaintiffs-Appellees,**

v.

**HOWMET CORPORATION et al., Defendants-Appellants.**

No. 75–1081.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 15, 1975.

Decided Oct. 16, 1975.

Rehearing Denied Nov. 24, 1975.
Certiorari Denied March 8, 1976.
See 96 S.Ct. 1435.

Charles J. Brown, Heffernan & Brown, Windham, N. Y., J. A. Bruggeman, Fort Wayne, Ind., Joseph J. C. Ranalli, New York City, for defendants-appellants.

Richard R. Trexler, John S. Fosse, Chicago, Ill., for plaintiffs-appellees.

Before CASTLE, Senior Circuit Judge, and SWYGERT and TONE, Circuit Judges.

TONE, Circuit Judge.

We are asked in this appeal to reexamine the issue of the validity of the patent held valid by this court five years ago in *Mercantile National Bank of Chicago v. Quest, Inc.*, 431 F.2d 261 (7th Cir. 1970), *cert. denied*, 401 U.S. 956, 91 S.Ct. 977, 28 L.Ed.2d 239 (1971). The District Court decided this issue, as well as issues of infringement, inventorship, and enforceability, in favor of the patent owner. We affirm.

The patent, which covers a portable device for providing continuous-suction evacuation of a closed surgical wound through a needle and tube connected to a spring-loaded plastic chamber, is adequately described in our earlier opinion. With the exception noted below, the same may be said of the prior art against which its obviousness must be judged.

A litigant who attacks the validity of a patent before a court that has held the patent valid in a prior case has the burden of persuading the court that there is a "material distinction" between that case and the case at bar. See *American Photocopy Equipment Co. v. Rovico, Inc.*, 384 F.2d 813, 815–816 (7th Cir. 1967), *cert. denied*, 390 U.S. 945, 88 S.Ct. 1030, 19 L.Ed.2d 1133 (1968). For reasons of stability in the law and judicial economy, we ordinarily will not reexamine *de novo* the decision of the court in the prior case but rather will limit ourselves to a consideration of whether, assuming the correctness of the earlier decision, additional facts not before the court in the prior case require a different result. This is but an application of the doctrine of *stare decisis*.

In the case at bar, defendants argue that the material distinction between the facts relating to validity in this and the earlier *Quest* decision, *supra*, is that a relevant portion of the prior art, namely, the Barron bottle, was not before the court in that case. The Barron bottle was disclosed in an article by Dr. J. N. Barron in the July 1959 issue of the *British Journal of Plastic Surgery* and was therefore a part of the prior art, if, as we assume for present purposes, the determinative date of the invention of the patent was the date of the application, July 14, 1960. The device described by Barron used a cylindrical plastic bottle as the chamber in which the negative pressure is created and maintained. After being squeezed, or compressed, the bottle slowly returned to its original shape and, as it did so, developed a negative pressure which caused fluid in the wound to be drawn through a connecting tube into the bottle. Defendants argue that this device renders obvious the device disclosed in the patent, which uses a chamber resem-

bling a concertina, with spring-loaded end pieces and bellows-type sidewalls, to develop the negative pressure and receive the fluid from the wound.

While the Barron bottle was not a part of the prior art shown in the earlier case, that art did include a device known as the Dakin syringe. Though somewhat different in shape, the Dakin syringe is nonetheless very similar to the Barron bottle in operation and principle. Defendants' counsel, in fact, conceded this at oral argument but argued that the prior art references before the court in the earlier case did not disclose the use of the Dakin syringe for continuous wound evacuation, while the Barron article showed the use of the Barron bottle for this purpose.

The issue is thus narrowed to whether the record in *Quest* discloses that the Dakin syringe could be used for continuous wound evacuation.[1] Clearly it does. As this court there observed, after describing the surgical technique of post-operative wound evacuation by negative pressure,

> "This surgical technique is now commonly used by surgeons; however, the method of providing the suction or negative pressure has varied. Compressed bulb syringes may in some cases be satisfactory but are not generally used." 431 F.2d at 264.

The court also referred to an article contained in the prior art exhibits:

> "Defendant further relies on the Maloney article, defendants' exhibit as prior art. The article describes 'Apposition and Drainage of Large Skin Flaps by Suction,' and is a further development of this technique. However, the suction pressure recommended by Maloney is 'either a bottle with a negative underwater seal or an electric or water pump' or 'the use of a syringe of the Dakin variety * * * .' " *Id.* at 265.

The article itself, which appeared in *The Australian and New Zealand Journal of Surgery*, describes the technique of continuous wound evacuation by suction and various devices that can be used for that purpose and states as follows:

> "Another method of obtaining a negative pressure is by the use of a syringe of the Dakin variety which is attached to the drainage tube after the rubber bulb has been compressed. It gives a means of suction which is readily portable for ambulant patients."

Defendants argue that the Dakin syringe appeared from the record in the *Quest* case to be less satisfactory than the Barron bottle appears from this record to have been, and that the belief that the syringe was not satisfactory was the basis for the court's finding of invention in the *Quest* case. It is true that the court found the results of the methods of obtaining negative pressure shown in the prior art not to be "as advantageous as the results obtained from the patent in issue." 431 F.2d at 265. But neither has it been shown in the case at bar that the Barron bottle achieved results as advantageous as those obtained from the patent. Moreover, in the *Quest* case the court acknowledged that "[c]ompressed bulb syringes may in some cases be satisfactory but are not generally used." 431 F.2d at 264. Defendants have not given us reason to believe otherwise with respect to the Barron bottle, nor have they actually demonstrated that the Dakin syringe was any less satisfactory than the Barron bottle, or that the Barron bottle was ever in general use. At most, the record shows that Barron bottles or similar devices were used by some surgeons who now appear to have abandoned them. The evidence falls far short of demonstrating surgical use of the Barron bottle so successful as to undercut the court's conclusion in *Quest* on the patent's improvement over the prior art.

1. Whether it was actually so used is, as defendants concede, immaterial, since mere publication of information rendering the subject matter of the patent obvious would cause the patent to be invalid. See 1 Walker, *Patents*, § 60 (2d ed. 1964).

Since the only prior art claimed to be significant which was not before the court in the earlier case is the Barron bottle, and yet the use of the very similar Dakin syringe for continuous wound evacuation was a part of the prior art before the court in that case, defendants have failed to make the necessary showing of a material distinction between the facts relating to obviousness in the two cases. We therefore adhere to the holding of *Quest* that the subject of the patent was not obvious. In view of this, it is unnecessary to consider whether the agreed date of conception, which antedated the Barron article, is controlling, and the issue whether after conception the inventors used reasonable diligence in reducing their invention to practice thus becomes academic.

Defendants also argue that the District Court neglected to make the step-by-step prior art analysis prescribed by *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); see also *Popeil Brothers, Inc. v. Schick Electric, Inc.*, 494 F.2d 162 (7th Cir. 1974). Here again it must be remembered that this is the second time the patent and the prior art have been considered by the District Court and this court. That which has been done before need not be done again, except to the extent the earlier analysis can be demonstrated to have been based on incomplete or erroneous information. Considering the two cases together, we think there has been substantial compliance with the requirements of the *Graham* case.

■■■ We turn now to the other defense that merits discussion here, *viz.*, that the patent is unenforceable because one of the joint inventors breached an equitable duty to assign his interest in the patent to a third party. Unfortunately considerable time and expense appear to have been devoted to discovery and trial on the fact questions relating to this defense. All this was unnecessary in our view, because the defense was insufficient in law. It has long been settled that a third party's equitable rights in a patent may not be asserted as a defense in an action for infringement brought by the owner of title to the patent. *McMichael & Wildman Mfg. Co. v. Ruth*, 128 F. 706, 707 (3d Cir. 1904); *Yablick v. Protecto Safety Appliance Corp.*, 21 F.2d 885, 889 (3d Cir. 1927); *Dubilier Condenser Corp. v. Radio Corp. of America*, 34 F.2d 450, 463–464 (D.Del.1929), *rev'd on other grounds*, 59 F.2d 305, 59 F.2d 309 (3d Cir. 1932), *cert. denied*, 287 U.S. 648, 53 S.Ct. 96, 77 L.Ed. 560 (1932); *Berghane v. Radio Corp. of America*, 6 F.R.D. 561, 563 (D.Del.1947).[2] We think the rule of these cases is not affected by the doctrine of *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945), which recognizes the right to assert fraud in the procurement of the patent as an unclean hands defense. Fraud in the procurement of the patent bears not merely on the ownership of the patent but on its substance and validity, and, moreover, offends the public's "paramount interest in seeing that patent monopolies spring from backgrounds free from fraud or other inequitable conduct and that such monopolies are kept within their legitimate scope." 324 U.S. at 816, 65 S.Ct. at 998. No similar considerations support an attempt to assert that a third party has an ownership interest in the patent.

The remaining questions raised on appeal, infringement and inventorship,[3] are

---

**2.** An analogous rule is stated in *United States v. Oregon*, 295 U.S. 1, 24, 55 S.Ct. 610, 619, 79 L.Ed. 1267 (1935):

"A bill to quiet title may not be defeated by showing that the plaintiff's interest, otherwise sufficient to support the bill, is subject to possibly superior rights in third persons not parties to the suit."

The rule is the same with respect to trespass to land. See, *e.g., Duck Island Hunting & Fishing Club v. Whitnah*, 306 Ill. 284, 291, 137 N.E. 840, 843 (1923).

**3.** On the issue of inventorship, defendants ask us to undertake an independent analysis of the facts, since the findings below were based largely upon documentary evidence rather

not of sufficient general interest or importance to justify treating them in a published opinion, under the standards stated in Circuit Rule 28. They are adequately disposed of by the findings and conclusions relating to them contained in the memorandum opinion of the District Court, which we adopt.

Plaintiffs have not cross-appealed from the District Court's denial of damages or attorneys' fees. Their motion in this court for an allowance of attorneys' fees on appeal is denied, but they will recover their costs.

Judgment of the District Court is affirmed.

Affirmed.

than oral testimony. While the "clearly erroneous" standard of review of Fed.R.Civ.P. 52(a) is less inhibiting when documentary rather than demeanor evidence is the basis for the District Court's findings (see Wright & Miller, *Federal Practice and Procedure*, § 2587 (1971)), those findings are nevertheless entitled to deference, and we are unable to say that we have come to a definite and firm conviction that an error has been committed in the findings on inventorship.