# United States Court of Appeals for the Federal Circuit

06-1147, -1172

MYMAIL, LTD.,

Plaintiff-Appellant,

v.

AMERICA ONLINE, INC.,

Defendant,

and

NETZERO, INC., JUNO ONLINE SERVICES, INC.
and NETBRANDS, INC.,

Defendants-Cross Appellants,

and

EARTHLINK, INC.,

Defendant-Cross Appellant,

and

SOUTHWESTERN BELL INTERNET SERVICES, INC.,
PRODIGY COMMUNICATIONS CORPORATION
and SBC INTERNET SERVICES, INC.,

Defendants-Appellees.

Douglas A. Cawley, McKool Smith, P.C., of Dallas, Texas, argued for plaintiff-appellant. With him on the brief were Theodore Stevenson, III, David Sochia, Christopher T. Bovenkamp, Charles W. Miller, and Bradley Wayne Caldwell.

L. Norwood Jameson, Duane Morris LLP, of Atlanta, Georgia, argued for defendants-appellees and defendants/cross-appellants, Earthlink, Inc. With him on the brief were Matthew C. Gaudet and Claus D. Melarti for Earthlink, Inc.; and Timothy G. Newman and Russell W. White, Larson Newman Abel Polansky & White, LLP, of Austin, Texas, for Southwestern Bell Internet Services, Inc., et al. Of counsel was Anthony A. Sheldon, Cardinal Law Group, of Evanston Illinois.

William J. Robinson and Ronald Coslick, Foley & Lardner, LLP, of Los Angeles, California, for defendants-cross appellants, Netzero, Inc., et al.

Appealed from: United States District Court for the Eastern District of Texas

Judge Leonard Davis

# United States Court of Appeals for the Federal Circuit

06-1147,-1172

MYMAIL, LTD.,

Plaintiff-Appellant,

v.

AMERICA ONLINE, INC.,

Defendant,

and

NETZERO, INC., JUNO ONLINE SERVICES, INC.
and NETBRANDS, INC.,

Defendants-Cross Appellants,

and

EARTHLINK, INC.,

Defendant-Cross Appellant,

and

SOUTHWESTERN BELL INTERNET SERVICES, INC.,
PRODIGY COMMUNICATIONS CORPORATION,
and SBC INTERNET SERVICES, INC.,

Defendants-Appellees.

_____

DECIDED:  February 20, 2007
_____

Before NEWMAN, SCHALL, and BRYSON, <u>Circuit Judges</u>.

BRYSON, <u>Circuit Judge</u>.

MyMail, Ltd., brought this patent infringement action in the United States District Court for the Eastern District of Texas, No. 6:04-cv-00189-LED, charging eight internet service providers with infringing U.S. Patent No. 6,571,290 ("the '290 patent"). The district court granted summary judgment of noninfringement, and MyMail appeals from that order. Four of the defendant internet service providers cross-appeal from the district court's ruling that MyMail has standing to assert infringement of the '290 patent. We affirm the district court's judgment in all respects.

I

The claims of the '290 patent relate to a method of providing network customers with access to a network, such as the internet, when they are away from their normal base of operations. The claimed method operates as follows: a customer who is temporarily in a remote location uses contact and login information (i.e., a telephone number and a preassigned user ID and password) to access the internet through an internet service provider (ISP) or through a third-party modem bank affiliated with that ISP. '290 patent, col. 4, ll. 62-64 & col. 6, ll. 11-13. Through that internet connection the user then contacts another entity called an "internet service provider access service" or ASP. The ASP provides the user with login information for a new ISP that is more suitable to the customer's remote location, typically because it is closer to that location. The user then terminates the connection to the internet established through the first ISP and reconnects to the internet by using the new ISP. To generalize the invention, the claims use the term Network Service Provider or NSP to refer to a party in a generic network performing the function of an ISP and providing modem services to network users. '290 patent, col. 5, ll. 38-44 & col. 6, ll. 11-13. The district court construed all the

asserted claims to require the presence of an NSP, a conclusion unchallenged here, and it defined NSP as "a party that provides a connection to the network and authenticates users for access to the network." The issue on appeal relates to the authentication requirement.

Each of the defendants' practices are the same in all respects pertinent to this appeal. In each accused architecture, a user dials in to a third-party modem bank associated with the defendant. The modem bank confirms that the user's ID has a "realm string" indicating that the user has an account with a domain serviced by the modem bank. Thus, for example, if the modem bank services EarthLink customers, the modem bank looks for the term "earthlink" in the customer's ID, as in the ID "user@earthlink.net." If the realm string does not match a domain serviced by the modem bank, the modem bank denies the user internet access. If the realm string matches, the modem bank sends the user's ID and password to the defendant that operates that domain. The defendant checks the ID and password combination against a database of valid users. The result of that authentication query is then communicated to the modem bank, where the user is allowed or denied internet access depending on whether the authentication process indicates that the customer is a valid user entitled to service. Once connected, the defendant updates the user's access information, which may include new or updated user IDs and passwords, or telephone numbers for third-party modem providers. The user then reconnects at a later time using the new access information.

Under MyMail's theory, the defendants infringe the asserted claims because the third-party modem banks serve as the NSPs referred to in the claims, while the

06-1147,-1172                                    3

defendants serve as the ASPs referred to in the claims. MyMail argues that the defendants infringe because the third-party modem banks and the defendants connect users to the internet and to NSPs by using the methods claimed in the patent.

The district court found that the patent defines authentication as the process of checking whether the user ID and password are valid. Because the defendants are the ones performing the authentication check and, under MyMail's theory, the defendants are the ASPs, the district court determined that the alleged NSPs did not perform the required authentication and thus the defendants could not infringe the patent.

On appeal, MyMail first argues that authentication is not a function the NSP must perform. Second, MyMail argues that even if the NSP must perform authentication, conducting a realm string check or forwarding the user's information to the ASP and allowing or denying access according to the defendants' reply would satisfy any authentication requirement. We agree with the district court that authentication is a required function of the NSP and that the functions performed by the NSP in the defendants' systems do not constitute authentication. Accordingly, we affirm the district court on this issue.

NetZero, Juno, Netbrands, and Earthlink cross-appeal, arguing that MyMail is not the owner of the patent and thus lacks standing to bring an infringement action. MyMail obtained ownership of the '290 patent through an assignment from Mr. Robert Derby. Mr. Derby had acquired the patent application through a state court foreclosure action on a promissory note secured by the application. The cross-appealing defendants allege that the promissory note was fraudulent and that MyMail's chain of title is therefore insufficient to establish lawful ownership of the '290 patent. They do not say

who the legal owner should be, but they assert that the district court must be able to inquire into that issue and, effectively if not explicitly, should be able to set aside the state court's judgment granting ownership rights to Mr. Derby. We agree with the district court that the state court judgment is not amenable to collateral attack in this proceeding and therefore deny relief on the cross-appeal.

II

We first address the jurisdictional question that several of the defendants have raised in their cross-appeal. A plaintiff must demonstrate legal title to the patent at the inception of the lawsuit to be entitled to sue for patent infringement. Paradise Creations, Inc. v. UV Sales, Inc., 315 F.3d 1304, 1309 (Fed. Cir. 2003). State law—in this case Texas law—governs the question of who has legal title. Int'l Nutrition Co. v. Horphag Research Ltd., 257 F.3d 1324, 1329-30 (Fed. Cir. 2001); Jim Arnold Corp. v. Hydrotech Sys., 109 F.3d 1567, 1572 (Fed. Cir. 1997). Here, MyMail has shown that it was the legal owner of the '290 patent at the inception of the lawsuit. MyMail relies in part on an enforceable state court judgment that transferred title under Texas law, a judgment that under Texas law is open to challenge only in certain limited circumstances. The cross-appealing defendants must nullify that judgment to establish a break in the title chain. They have not attempted to do so under the applicable provisions of state law.

Instead, the cross-appealing defendants argue that, as a matter of federal law, anyone can assert fraud at any time and thereby require a federal court to "make an independent review of all facts underlying [the] purported chain of title." In support of that proposition, the defendants rely on Precision Instruments Manufacturing Co. v.

<u>Automotive Maintenance Machinery Co.</u>, 324 U.S. 806 (1945), and its progeny, which deal with conduct relating to the procurement of a patent. While it is true that later-discovered fraud relating to patent procurement can be raised as a defense in federal court, the same is not true of fraud relating to patent ownership. Fraud in the procurement bears on the enforceability of the patent and thus implicates the public's interest in ensuring that the grant of patent rights is legitimate. <u>Mercantile Nat'l Bank v. Howmet Corp.</u>, 524 F.2d 1031, 1034 (7th Cir. 1975) (citing <u>Precision Instruments</u>, 324 U.S. at 816). Asserting that a third party owns a particular patent, however, is a different matter. In that case, the enforceability of the patent is not challenged; the only question is one of ownership. <u>See</u> <u>id.</u> State law, not federal law, addresses such property ownership disputes. Accordingly, we affirm with respect to the cross-appeal.

III

On the merits, MyMail first argues that the district court wrongly construed the patent to require the NSP to perform authentication. Both parties agree that the term NSP is a coined term, without a meaning apart from the patent. As construed, all the asserted claims involve communicating with the ASP through a connection established by the NSP. We therefore look to the specification to determine what the NSP must do when establishing that communication link. <u>See</u> <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1316-17 (Fed. Cir. 2005) (en banc).

An examination of the specification reveals that the invention requires the user to be authenticated before being given access to the internet. When describing the initial steps of the inventive method, the specification states that, "[t]o begin the process of the present invention," the user is provided a telephone number, a user ID, and a password

associated with an ISP to allow the user to gain access to the internet. '290 patent, col. 6, ll. 32-46. Additionally, much of the invention is concerned with giving users new IDs and passwords, items described as "necessary" to allow an ISP to grant access to a user. E.g., '290 patent, col. 8, ll. 22-27; col. 7, ll. 55-59; col. 9, ll. 55-58. The IDs and passwords described would serve no function if the user did not have to be authenticated before being connected to the internet.

The specification also indicates that the ISP (and therefore the NSP) is the entity performing the authentication. In addition to stating that the ID and password are "ISP specific," '290 patent, col. 2, ll. 21-24, the specification states that, "[u]pon receipt of the access information, the ISP 'authenticates' the user" and, if the access information is valid, the user is then connected to the internet. Id. col. 6, ll. 40-46, 66-67 & col. 7, ll. 10-19 (figure references omitted).

The specification shows that the ASP cannot perform the required authentication. Besides explicitly stating that the ISP performs the authentication, the specification describes the authentication and connection steps as being completed before the ASP becomes relevant. See '290 patent, col. 7, ll. 32-33. With the exception of the unclaimed embodiment discussed below, nothing in the specification suggests that the ASP assists in the connection process. Moreover, part of the ASP's function is to distribute the "necessary" IDs and passwords to users. E.g., id. col. 8, ll. 22-27; col. 7, ll. 55-59; col. 9, ll. 55-58. That distribution function would not be required if the ASP performed the authentication; one ID and password combination would suffice because only one entity would ever need to evaluate it. A major function of the claimed invention would thus be obviated if the ASP authenticated users for access to the internet.

Accordingly, we interpret the specification as requiring the NSP to perform the authentication function.

MyMail argues that the specification discloses authentication by the ASP because the specification describes an embodiment in which it is required that "all user (client) authentication for all ISPs happens at the [ASP] (i.e., all authentication for all ISPs is centralized) or at a centrally located database point." '290 patent, col. 23, line 67, through col. 24, line 4. That embodiment, however, is part of the so-called "multi-dial subfunction" embodiment that MyMail has conceded to be part of an unclaimed invention.

In the multi-dial subfunction embodiment, authentication must be centralized to allow one user ID and password combination to be used for multiple ISPs. In that system, the user may be assigned to an ISP without requiring the user to disconnect and reconnect using new login information. '290 patent, col. 24, ll. 7-16. No such functionality is contemplated in the claimed invention, however. In fact, the added functionality is disclosed as the advantage of the unclaimed embodiment over the claimed invention. See id. col. 24, ll. 14-17. Because the identity of the entity performing authentication was dictated by a functional improvement over the claimed invention, the multi-dial subfunction embodiment does not speak to which entity performs authentication in the claimed invention. See LG Elecs., Inc. v. Bizcom Elecs., Inc., 453 F.3d 1364, 1378 (Fed. Cir. 2006) (finding specification language relating to additional functionality in an unclaimed invention irrelevant to the claimed invention).

Moreover, before the district court MyMail agreed that the patent contemplates that the NSP will perform the authentication function. During the <u>Markman</u> hearing, MyMail's counsel stated the following:

> The Court asked a number of real-world questions of [defendants' counsel] about how [the defendants do] authentication and where it happens and so forth. There is no dispute between the parties that it is part of what the NSP does to serve as an authentication gatekeeper. When the user dials into the network service provider, there has to be some authentication. That is one of the things that the network service provider [NSP] does.
> The claims, however, do not address where the database for that authentication is maintained. . . .
> So the specification tells us that the location of that database is not really important. It is important that the NSP has to do it, but it is clearly a remote database.

The context makes clear that counsel's statement refers to the scope of the claims; counsel acknowledged that under the patent the "NSP has to do [authentication]" but disagreed about whether a remote database would satisfy that requirement.

Defendants' counsel referenced that point later in the hearing, prompting the district court to ask about the extent of the parties' disagreement as to the required function of the NSP. In response, MyMail's counsel reviewed the proposed claim construction, which referred to "a provider of network services that authenticates users for access to its services based on user IDs and passwords." MyMail's counsel read the proposed language aloud, accepting or objecting to various portions as he went along. The following exchange occurred when he reached the authentication requirement:

> [MyMail's counsel]: That authenticates user's access to its service. Okay. Based on user ID and passwords those limitations are not contained in the claims. The specification makes it clear that it is log-in and authentication information not limited to user ID, not limited to

password, and certainly not making appropriate the conjunctive "and" that you have to have both.

The Court [addressing defendants' counsel]: Do you have a problem . . . with taking out the part about the passwords and that part of the further definition of what authentication means?

In that statement, as in the earlier one, MyMail's counsel agreed as to the entity that had to perform authentication but disagreed as to the method of authentication, i.e., what information was employed to authenticate the user. Having agreed to that construction before the district court, MyMail "cannot now argue against that claim construction simply because it resulted in an adverse ruling on summary judgment." LizardTech, Inc. v. Earth Res. Mapping, Inc., 424 F.3d 1336, 1341 (Fed. Cir. 2005). In light of the specification's teachings and MyMail's admissions below, the district court's claim construction must be affirmed.

IV

MyMail argues that even under the district court's claim construction, the third-party modem banks in the defendants' systems perform "authentication," as the patent defines that term. Because there is no dispute regarding the operation of the accused systems, that issue reduces to a question of claim interpretation and is amenable to summary judgment. See Gen. Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 983 (Fed. Cir. 1997) ("Where the parties do not dispute any relevant facts regarding the accused product . . . but disagree over possible claim interpretations, the question of literal infringement collapses into claim construction and is amenable to summary judgment.").

As described in the patent and as conceded by MyMail, authentication is the process of determining the validity of a user's ID and password. '290 patent, col. 6, line 62, through col. 7, line 2. Determining the validity of the ID and password requires that

a definitive decision be made. If the user fails the authentication step, access is denied. If the user passes, access is granted. Id. col. 7, ll. 7-16. Neither of the processes asserted by MyMail satisfies those requirements.[1]

MyMail argues that the realm string comparison satisfies the authentication requirement. However, the process of realm string checking does not determine the validity of the user's ID and password. At most, realm string checking can deny access to some subset of unauthorized users; it cannot be used to determine that a user is authorized to access the internet, as required by the patent. Accordingly, realm string comparison does not satisfy the authentication requirement.

MyMail also contends that the act of asking the defendants to perform the database comparison and then allowing or denying access to the user based on the defendants' answer satisfies the authentication requirement. While asking another party to do the database lookup is, in a general sense, checking to see whether the ID and password are valid, the patent contemplates that the entity performing the database comparison is the party that performs the validation. The requester merely forwards requests and then follows orders. In the defendants' systems, the third-party modem banks (which MyMail refers to as the NSPs of the patent) do not determine whether the ID and password are valid; that task is performed by the defendants (which MyMail refers to as the ASPs of the patent). The NSPs of the claimed method therefore do not

---

[1] When arguing against summary judgment in the district court, MyMail submitted a declaration and report from its expert, Dr. Jeffrey Smith, who stated that in his opinion the defendants satisfied the authentication requirement. Dr. Smith's opinion was based on a definition of authentication that does not require a definitive decision concerning the user and that allows the ASP to perform the database query. Because those assumptions are contradicted by the specification, Dr. Smith's evidence does not create a genuine issue of material fact.

perform authentication as that term is used in the patent.  Accordingly, we affirm the district court's grant of summary judgment of noninfringement.

Each party shall bear its own costs for this appeal and cross-appeal.

<u>AFFIRMED</u>.