WILLIAM REID and Net P
& L, Inc., Plaintiffs,

v.

GENERAL MOTORS CORP.,
et al., Defendants.

William Reid and Net P &
L, Inc., Plaintiffs,

v.

Charles Schwab Corporation,
Defendant.

Nos. 2:07 CV 19 DF, 2:05 CV 401 DF.

United States District Court,
E.D. Texas,
Marshall Division.

May 22, 2007.

Ruffin B. Cordell, Indranil Mukerji, James A. Fussell, III, Robert P. Courtney, Fish & Richardson P.C., Washington D.C., for Microsoft Corp.

Monte Bond, William Cramer, Godwin Pappas Ronquillo, Dallas, for Halliburton Co.

Edward L. von Hohn, Rodney A. Cooper, Edward K. Chin, Anthony Bruster, Nix Patterson & Roach, Irving, for Plaintiffs.

David J. Healey, Garland Stephens, Norma Bennett, Leslie Dite, Weil Gotshal & Manges, Houston, for General Motors Corp.

Bob Cote, Rodger Sadler, Orrick Herrington & Sutcliffe, New York, NY, for Charles Schwab & Co.

### ORDER

FOLSOM, District Judge.

Before the Court is Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, Dkt. No. 19. Also before the Court are Plaintiffs' response, Defendants' reply, and Plaintiffs' sur-reply. Dkt. Nos. 32, 34, & 43, respectively. The defendant in Civil Action No. 2:05–cv–401, Charles Schwab Corporation, also joins in the present motion. *See* Civil Action No. 2:05–cv–401, Dkt. No. 119. The Court held a hearing on April 18, 2007. Having considered the briefing and all relevant papers and pleadings, the Court finds that Defendants' motions should be **GRANTED**.

## I. BACKGROUND

Plaintiffs allege infringement of United States Patent No. 6,131,120 (the " '120 Patent"). Third Amended Complaint, Dkt. No. 2. The Abstract of the '120 Patent reads as follows:

> An enterprise network using a wide area network (WAN), and having routers and servers, uses a master direct[ory] to determine access rights, including the ability to access the WAN through the routers and the ability to access the se[rv]er over the WAN.

Plaintiff William J. Reid ("Reid") is the named inventor of the '120 Patent. Reid purportedly relies on a conception date in April 1996, at which time Plaintiff was an officer of a company called Plancom, Inc. ("Plancom"). Dkt. No. 19 at 3, 5 & 9. Plaintiff left Plancom in May 1996. *Id.* at 5 & 9.

Plancom brought suit in Texas state court against Reid on May 20, 1996, alleging misappropriation of trade secrets, breach of fiduciary duty, breach of confidentiality, and theft under the Texas Penal Code. Dkt. No. 19 at 5. After the state court issued a temporary restraining order, Plancom and Reid executed a Settlement Agreement on June 10, 1996, and the state court issued an Agreed Permanent Injunction on June 18, 1996. Dkt. No. 19

at Exs. 6 & 7. The '120 Patent reflects a filing date of October 24, 1997.

## II. LEGAL PRINCIPLES

■ "The burden of demonstrating standing falls to [Plaintiff], as '[i]t is well established ... that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue.'" *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026 (Fed.Cir.1995) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 154, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)).

■ One seeking damages for infringement of a patent must hold legal title to that patent. *See, e.g., Rite–Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538 (Fed.Cir. 1995). A party without title has no standing to bring suit. *Filmtec Corp. v. Allied–Signal Inc.*, 939 F.2d 1568 (Fed.Cir.1991). "Further, all co-owners must, ordinarily, consent to join as plaintiffs in an infringement suit." *DDB Techs. v. MLB Advanced Media, LP*, 465 F.Supp.2d 657, 661 (W.D.Tex.2006).

"In examining a Rule 12(b)(1) motion, the Court is empowered to consider matters of fact which may be in dispute." *Id.* A court may not grant dismissal "unless it appears certain that the plaintiffs cannot prove any set of facts in support of their claim which would entitle them to relief," and a court "must take as true all of the allegations of the complaint and the facts as set out by the [plaintiffs]." *Saraw Partnership v. U.S.*, 67 F.3d 567, 569 (5th Cir.1995).

## III. THE PARTIES' POSITIONS

Defendants argue that Plaintiffs are not the owners of the '120 Patent because Reid assigned his interest in the '120 Patent to Plancom through an Intellectual Property Rights Assignment ("IP Assignment"). Dkt. No. 19 at 10. Reid thereby agreed to assign all "Innovations" to Plancom, and the agreement defines "Innovations" as:

inventions, improvements, procedures, and techniques conceived or constructed by the employee during his affiliation with the company, which *reasonably relate[ ] to the business or contemplated business* of the company at the time of the conception or construction, whether produced alone or in concert with others, and irrespective of whether made during or outside the usual working hours of the employee or with or without the use of company facilities or materials.

Dkt. No. 19, Ex. 1 at Ex. A (emphasis added). As to the "business or contemplated business" of Plancom, the IP Assignment states as follows:

The company is engaged in creating and deploying easily-accessible high speed data communications services for computer users requiring connectivity to their office LAN or other computing resources when they are physically away from their normal office or work environment. Access to this service would typically involve wireless connection to wired communications infrastructure operated by or for the company.

*Id.* Defendants summarize Plancom's business as including "the development and deployment of communications services whereby remote users could access the Local Area Network ('LAN') of their employer." Dkt. No. 19 at 10. Because the '120 Patent purportedly discloses an invention for providing network security that would be useful and valuable in this business, Defendants argue that the '120 Patent is subject to the IP Assignment. *See id.* at 13. Defendants also indicate that United States Patent No. 5,835,061 (the " '061 Patent") is representative of

Plancom's business, and Defendants point to similarities between the '061 Patent and the '120 Patent. Dkt. No. 19 at 13.

Defendants further argue that the Settlement Agreement executed between Plancom and Reid in June 1996 required Reid to comply with the IP Assignment and to return or destroy any materials related to inventions conceived during Reid's employment at Plancom. *See* Dkt. No. 19 at Ex. 6.

Plaintiffs respond that the '120 Patent "is not reasonable related to the business of Plancom." Dkt. No. 32 at 2. Plaintiffs propose that Texas state law applies to determine ownership of the '120 Patent. *Id.* at 3. Plaintiffs argue that the '120 Patent relates to enterprise network security rather than to Plancom's business, which Plaintiffs submit was simply providing connectivity to a network from a remote location. *Id.* at 5. Plaintiffs argue that "[b]ecause the '120 Patent is directed to internal network security, the '120 Patent does not address the means by which a user obtains access to the network." *Id.* at 6. While the specification of the '120 Patent may describe establishing connections, Plaintiffs argue, the '120 Patent does not *claim* such matter, so that matter should not be considered in comparing the '120 Patent to Plancom's business. *Id.* at 7–10. Overall, Plaintiffs argue that Plancom's business relates to wireless network access while the invention of the '120 Patent relates to intra-network security.

As to the '061 Patent, Plaintiffs argue that "the purpose and methods of the '120 Patent and the '061 Patent are inapposite" because the '120 Patent claims an invention authenticating a user's identity while the '061 Patent only claims an invention

for determining a user's location. *Id.* at 10–11. Plaintiffs also note that the PTO classified the '061 Patent in a different class of technologies.[1] *Id.* at 13. Plaintiffs submit business and litigation documents from Plancom that purportedly show that "Plancom's focus is connectivity." *Id.* at 13–16.

Defendants reply that Reid maintained an inventor's notebook on the invention of the '120 Patent and failed to disclose this notebook as required by the Settlement Agreement. Dkt. No. 34 at 2. Defendants argue that network security, such as that provided by the '120 Patent, was of great importance to Plancom's potential customers. *Id.* at 2 & 6–8.

Defendants further reply that Plancom's business was more than simply providing "connectivity" because, for example, "[i]f Plancom could not limit access to only its customers, no one would bother to pay for the service." *Id.* at 5–6. Defendants emphasize a Plancom document written by Reid explaining that "[t]he Plancom network also provides full comprehensive network security." *Id.* at 6 (quoting Ex. 6 at 6). Defendants also argue that Plaintiffs' wireless network installation at the Omni Hotel near Dallas is conclusive because Plaintiffs admitted that the Omni Hotel network was an implementation of the '120 Patent; Defendants argue that the Omni Hotel network closely resembled Plancom's business, so the '120 Patent is, in turn, reasonably related to Plancom's business. *Id.* at 8–9.

In a post-hearing sur-reply, Plaintiffs argue that the Court should not consider evidence other than the IP Assignment in determining the scope of Plancom's busi-

---

**1.** The PTO classified the '120 Patent in class 709, defined as "electrical computers and digital processing systems: multicomputer data transferring," while the '061 Patent is in class 342, defined as "communications: directive radio wave systems and devices (e.g., radar, radio navigation)." *See* http://www.uspto. gov/web/patents/classification/.

ness. Dkt. No. 43 at 3. Plaintiffs also argue that "[t]he '120 Patent is directed to using directory services to manage and control the internal networks of companies; it is not directed to providing the means for connecting to the Internet or to an enterprise's network as contemplated by Plancom's business plan." *Id.* at 5. Plaintiffs characterize the Plancom business documents submitted by Defendants as relating only to "connectivity," and Plaintiffs argue that these documents "do not show that the Plancom concept was entirely dependent on authorizing users." *Id.* at 8–9. Plaintiffs further argue that at the relevant time Plancom lacked the technology to "limit authenticated users' access to specific computing resources," and Plaintiffs argue Plancom never considered providing such security services. *Id.* at 9. Plaintiffs also argue that the testimony of former Plancom officers Goode and Jackson, which Defendants cite, is unreliable. *Id.* at 10–12.

## IV.  DISCUSSION

■ Defendants assert that a third party is the true owner of the asserted patent, and "[s]tate law, not federal law, addresses such property ownership disputes." *MyMail, Ltd. v. America Online, Inc.,* 476 F.3d 1372 (E.D.Tex.2007); *see also Regents of the Univ. of N.M. v. Knight,* 321 F.3d 1111, 1118 (Fed.Cir.2003) ("State law governs contractual obligations and transfers of property rights, including those related to patents.") "Whether a contract is ambiguous is a question of law." *Excel Auto and Truck Leasing, LLP v. Alief Indep. School Dist.,* 2007 WL 1152980, at *4 (Tex.App.—Houston [1st Dist.] Apr.19, 2007) (citing *Gulf Ins. Co. v. Burns Motors, Inc.,* 22 S.W.3d 417, 423 (Tex.2000)). "If a contract is determined to be ambiguous, then a court may consider [extrinsic] evidence to ascertain the true meaning of the instrument." *Id.* (citing

*Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995)). "An ambiguity arises when a contract is reasonably susceptible to more than one meaning." *Ganske v. WRS Group, Inc.,* 2007 WL 1147357, at *4 (Tex.App.—Waco Apr.18, 2007) (citing *Fox v. Parker,* 98 S.W.3d 713, 719 (Tex.App.—Waco 2003, pet. denied)).

■ Because Plaintiff Net P & L, Inc.'s title to the '120 Patent is derived from Reid's title, if any, the Court need only determine whether Reid assigned his interest in the '120 Patent to Plancom. Although Plaintiffs argue that "Defendants concede that the [IP] Assignment is unambiguous," the Court does not find such a concession. Regardless, the question of ambiguity is a question of law for the Court. *Gulf Ins. Co. v. Burns Motors, Inc.,* 22 S.W.3d at 423. The "business or contemplated business" of Plancom is "reasonably susceptible to more than one meaning" insofar as it may or may not be construed to include the invention disclosed in the '120 Patent. Dkt. No. 19, Ex. 1 at Ex. A. *Ganske,* 2007 WL 1147357, at *4. Because this ambiguity becomes evident before extrinsic evidence about the agreement is considered, the Court may properly consider such evidence. *Quiroz ex rel. Quiroz v. Covenant Health System,* —— S.W.3d——, 2007 WL 687644, at *8 (Tex.App.—El Paso Mar.8, 2007). The Court therefore considers the IP Assignment in the context of the extrinsic evidence in order to ascertain the "true meaning" contemplated by the parties to the agreement. *Excel Auto and Truck Leasing,* 2007 WL 1152980, at *4.

As a preliminary matter, Reid averred that upon executing the Affidavit that is part of the Settlement Agreement, he had "destroyed or returned" to Plaintiff "all writings and recordings" including those

related to "inventions, improvements, procedures and techniques conceived or constructed by [Reid] during [his] affiliation with Plancom . . . ." Dkt. No. 19, Ex. 6 at 17. Reid's decision not to destroy or return the inventor's notebook related to the invention of the '120 Patent may reflect a perception by Reid that this invention was not reasonably related to Plancom's business or contemplated business. Regardless, the withholding of the inventor's notebook is not directly relevant to the question presently before the Court, which is whether the '120 Patent is reasonably related to Plancom's business or contemplated business. The Court now turns to that question.

■ The invention of the '120 Patent "relates to computer networks for managing enterprise network access and providing enterprise network security." '120 Patent at 1:8–10. The invention "extends the concept of directory services to the management and control of enterprise networks by integrating directory technology, router/gateway management, and server management to form an enterprise network management and network security solution." *Id.* at 5:23–27. The invention implements security by maintaining a directory of "objects" (such as "users, router/gateways, and servers") and the "attributes" corresponding to objects (such as "IP address, password, privileges, and location"). *Id.* at 6:13–16. The claims of the '120 Patent cover, for example:

1. [A] master directory service for a wide area network (WAN), comprising:
a wide area network;
a plurality of local area networks (LAN[s]) connected to the WAN through router/gateways;
a directory connected to one or more LAN[s];
a master directory having a directory of objects, including servers and rout-

er/gateways, the objects having attributes for indicating access right[s], connected to one of said plurality of LAN[s], said master directory distributing information to the directory of each LAN, said information indicating which of the users of each of the plurality of LANs connected to the WAN [are] allowed to have access to the WAN resources such as router/gateways, servers and workstations.

*Id.* at 10:50–65.

These features of the invention of the '120 Patent bear many similarities to Plancom's business, as stated in the IP Assignment and as reflected in the '061 Patent and Plancom's business documents.

The IP Assignment describes Plancom's business as providing "high speed data communications services for computer users requiring connectivity to their office LAN or other computing resources when they are physically away from their normal office or work environment." Dkt. No. 19, Ex. 1 at Ex. A. Because the '120 Patent discloses an invention that facilitates network access in the context of, for example, "telecommuting," the '120 Patent is related to the "data communications services" for users who are "physically away from their normal office" referred to in the IP Assignment. '120 Patent at 1:24; *id.* The '120 Patent is thus reasonably related to Plancom's business.

The Court also considers the '061 Patent and Plancom's business documents. The application leading to the '061 Patent was filed by one of Plancom's founders, Brett Stewart, and this application "related to the technology and innovations that Plancom was formed to develop and implement." Dkt. No. 19 at 12; Stewart Aff., Dkt. No. 19, Ex. 3 at ¶ 2. The '061 Patent discloses an invention that, in one preferred embodiment, determines the loca-

tion of a mobile user and uses that information to provide the mobile user with appropriate services. In other words, "[t]he invention generally relates to a geographic-based communications service and, more particularly, is concerned with an apparatus and method for using known locations of wireless local area network access points (APs) to service mobile users (MUs) of portable smart devices (e.g., notebook, personal computers, PDA, etc.) who are in the vicinity of these APs." '061 Patent at 1:7–13.

The claims of the '061 Patent refer to establishing the identity of a user. Claim 1, for example, describes the use of a "unit ID identifying said portable computer." '061 Patent at 8:33–34. More specifically, Claims 18, 19, and 20 all describe using a "user ID"[2] to identify a portable computer and interact with it in a manner that is "dependent upon said user ID." *Id.* at 10:59–63, 11:22–25 & 12:19–22. This interaction between the network and a particular user bears at least some resemblance to the security features disclosed and claimed in the '120 Patent.

The specification of the '061 Patent further suggests that the invention includes a form of authentication similar to that disclosed in the '120 Patent. Figure 2 illustrates the invention's step of comparing a given mobile unit identity ("MU I.D.") with pre-stored identities to determine whether to begin communication with a particular mobile unit. '061 Patent at Fig. 2 & 4:1–4. The '061 Patent also describes how "system software could be programmed to provide service gates in which a user identification code is compared with a list of authorized codes for access to [a] particular service." *Id.* at 5:12–15. This checking of a mobile unit's "identity" and check-

ing whether a user has an "authorized code[]" resembles the use of a "master directory" and "access rights" described in the '120 Patent. *See, e.g.*, Claim 1 of the '120 Patent at 10:50–65.

Reid has acknowledged that the invention disclosed in the '061 Patent was within Plancom's business purposes. Reid Depo., Dkt. No. 34, Ex. 1 at 143:23–144:2. Because the '061 Patent described one or more security-related features, as discussed above, secure networking was within Plancom's business. Because the '120 Patent was also directed to security and authentication, the '120 Patent is reasonably related to the business or contemplated business of Plancom.

Other evidence of Plancom's business also supports a finding that the '120 Patent is reasonably related thereto. While an officer of Plancom, Reid authored a document entitled "Cost justifying the Plancom service," which read in pertinent part:

The Plancom network also provides full comprehensive network security. The Plancom LAN-speed network remote security will exceed in-house security and provide substantial benefits or [sic] phone line connections in these areas:

- Authentication and encryption enable the secure communication of business-critical and sensitive information.

- Individual users and remote offices have secure connections to their private network

.  .  .  .  .

- Provide secure access on demand, allowing access to private networks when and where needed.

---

2.  Claims 18, 19, and 20 use the term "said user ID," which lacks an antecedent basis unless the patentee intended to use the term "user ID" interchangeably with the term "unit ID," which appears earlier in each of these claims.

Dkt. No. 34, Ex. 6 at 6. This document demonstrates that Plancom's business or contemplated business included providing security for its networking technology, even if the Court accepts Plaintiffs' argument that Plancom's business was not "entirely dependent" on providing security. Dkt. No. 43 at 8 & 9. Because the '120 Patent is directed toward network security, as discussed above, the '120 Patent is reasonably related to Plancom's "business or contemplated business."

Plaintiffs argue that the '120 Patent cannot be related to Plancom's business or contemplated business because, at the relevant time, Plancom lacked the technology to "limit authenticated users' access to specific computing resources." *Id.* at 9. Plaintiffs' argument is unpersuasive because an invention is ordinarily a new technology. Even assuming Plancom had no way of limiting the access of authenticated users, such technology could still have been part of Plancom's contemplated business. Because Plancom's contemplated business included providing network security, as discussed above, the '120 Patent is reasonably related thereto, regardless of whether Plancom already had such technology or the ability to use such technology.

For all of the foregoing reasons, the '120 Patent is within the scope of the IP Assignment. Such an assignment automatically transfers title "by operation of law" once an invention comes into being. *DDB Techs.*, 465 F.Supp.2d at 668 (citation omitted). Plaintiffs are without title and, therefore, without standing to bring the instant suit, and Defendants' motions to dismiss for lack of subject matter jurisdiction should be **GRANTED**.

## V. CONCLUSION

Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. No. 19) is hereby **GRANTED** and Plaintiffs'

Third Amended Complaint (Dkt. No. 2) is hereby **DISMISSED WITHOUT PREJUDICE**.

Similarly, because the defendant in Civil Action No. 2:05–cv–401, Charles Schwab Corporation, also joins in the present motion, Plaintiffs Third Amended Complaint in that case (Civil Action No. 2:05–cv–401, Dkt. No. 19) is also **DISMISSED WITHOUT PREJUDICE**.